JAMES BERRIDGE *v.* STATE OF INDIANA.

[No. 1-1074A154. Filed February 3, 1976. Rehearing denied March 12, 1976. Transfer denied June 17, 1976.]

*Malcolm G. Montgomery,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—This is an appeal by defendant-appellant, James Berridge, from a judgment of the Vanderburgh Superior Court convicting Berridge of the crimes of theft of government property by deception[1] and conspiracy to commit a felony, to-wit: theft of government property by deception.[2]

## FACTS

While employed as Assistant City Engineer in Evansville, Indiana, defendant James Berridge was responsible for sidewalks, streets, gutters, and curbs. He had the authority to let contracts for repair of these items personally if the cost involved was less than two thousand dollars ($2,000.00). After the work was done, it was Berridge's duty to see that the work was inspected.

In order for the contractor to get paid for his work, several documents were necessary. Among them were a "Sidewalk Inspection Sheet" which had a space for Berridge's signature under the following certification: "The above work has been completed and verified. Please write the purchase order requisition." Another necessary document was the green copy of the purchase order (known also as the "receiving form") which Berridge would sign and which contained the following certification: "I hereby certify that the above items have been received in good condition, except as noted." With-

1. IC 1971, 35-17-5-3 (Burns Code Ed.).
2. IC 1971, 35-1-111-1 (Burns Code Ed.).

out a sidewalk inspection sheet properly signed, other necessary documents would not be written. Without the green copy of the purchase order properly signed, no payment to the contractor would be made. Berridge's signature on the green form was taken by other officers and employees of the City as showing that the work had been done.

During his tenure as Assistant City Engineer, Berridge signed sidewalk inspection sheets and green form purchase orders for work done by Robert Heinlin at eleven different locations in Evansville. No work was in fact done at any of these locations. The documents all said the work at these locations had been done by Heinlin.

Berridge assigned work to Heinlin. Heinlin signed claims for work not done and in return for the money bought tickets to political dinners. Tickets for political dinners were sold to Heinlin by Berridge.

John Crouch, a sidewalk inspector, testified that Berridge never asked him to inspect any sidewalk gutter and curb walk; that when he asked Berridge to let him inspect such items, Berridge said no, it wasn't necessary, and he would take care of it himself. Crouch found work badly done at one intersection. When he reported it to Berridge, Berridge said he would take care of it, but he never did anything about it. The sidewalk inspector had no knowledge of what work went on; only Berridge knew all the construction work going on.

Charles Johnson, also a sidewalk inspector, testified that Berridge never explained the use of the sidewalk inspection sheets to him, and he didn't know what they were. However, Berridge did have Johnson sign as the inspector a number of the sheets in blank. Berridge continued to use sheets that Johnson had signed for several months after Johnson had left employment with the City Engineer's Department.

Berridge had sufficient manpower available to do the inspection; he never reported any discrepancies. Berridge knew

and understood at the time he signed the inspection sheets and the green copies that he was certifying with his signature that the work had been done.

At one point in the trial, Heinlin, a State's witness, denied on cross-examination by defense counsel that he had an agreement with Berridge "to obtain funds from the city falsely." On redirect, Heinlin was asked if he had pled guilty to a charge of "conspiracy with James Berridge to defraud the city of $680.00." Over the objections of defense counsel, Heinlin was permitted to answer "Yes." On re-cross examination, defense counsel asked "And the Court, or Mr. Redwine, did not go into the facts of the case with you on your guilty plea, is that correct?" Heinlin answered that no one advised him except himself and his attorney. The State offered to introduce the transcript of the guilty plea for purposes of impeaching Heinlin, and the same was admitted over objection of defense counsel. The court advised the jury that testimony as to Heinlin's plea was only to be considered for impeachment purposes, and ordered the jury not to consider questions relating to Heinlin's plea in determining Berridge's guilt or innocence.

## ISSUES

On appeal, Berridge argues the following four points:

1)  The verdict of the jury is not supported by sufficient evidence upon all of the necessary elements of the offense of theft of government property by deception, and is contrary to law.

2)  The verdict of the jury is not supported by sufficient evidence upon all the necessary elements of the offense of conspiracy to commit theft of government property by deception, and is contrary to law.

3)  The trial court committed error in allowing the State to elicit testimony from Robert Heinlin, Jr., the alleged co-conspirator, concerning the said co-conspirator's guilty plea.

4) The trial court committed error in allowing the State to introduce into evidence the transcript of the guilty plea proceeding of the alleged co-conspirator, Robert Heinlin, Jr. Specifications numbered 5 to 15 of Berridge's motion to correct errors have been waived by his failure to brief or argue the issues, or cite authority in support of the claimed errors.

Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805.

## I.

The Offenses Against Property Act, IC 1971, 35-17-5-3 (Burns Code Ed.) provides in relevant part as follows:

"A person commits theft when he

(1) knowingly:

\* \* \*

(b) obtains by deception control over property of the owner or a signature to any written instrument

\* \* \*

and

(2) either:

(a) intends to deprive the owner of the use or benefit of the property. . . ."

IC 1971, 35-17-5-13 (Burns Code Ed.) provides in part:

"(3) 'Deception' means knowingly to:

\* \* \*

(e) fail to correct a false impression which he knows to be influencing another to whom he stands in a relationship of special trust and confidence.

\* \* \*

(10) 'Obtains or exerts control over property' includes but is not limited to the taking, carrying, driving or leading away, concealment, or the sale, conveyance, encumbrance, transfer of title to or interest in, or possession of property, or the securing or extending a right to retain that to which another is entitled."

Berridge argues that he did not receive any money or thing of value. Even if true the contention is irrelevant, since receipt of money or other thing of value is not an element of the crime charged. *See Sutton* v. *State* (1972), 258 Ind. 175, 279 N.E.2d 802. Money that belonged to the city was transferred to Heinlin on the basis of Berridge's signature certifying satisfactory completion of the work. Berridge clearly exercised control over the property.

Further, there is more than adequate evidence to support a finding that Berridge failed to correct a false impression that he knew would influence the city to pay the contractor Heinlin. Berridge stood in a relationship of special trust and confidence to the city, inasmuch as the city depended on him to give accurate certifications as to the amount of work completed. In signing the green form, he failed to correct a false impression which his previous signing of the sidewalk inspection sheet had created. He prevented or at least discouraged the sidewalk inspectors from inspecting Heinlin's work. In so doing, he prevented others from acquiring information pertinent to the disposition of the property involved. Berridge knew that his certification was necessary to obtain payment from the city, and that payment would not be made unless the green form was signed.

All that remains to be shown in order to establish the first element of theft is that Berridge *knowingly* obtained by deception control over property of the owner. Knowledge may be inferred from circumstantial evidence, from the facts presented at trial, and from the totality of the evidence. *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E.2d 833. In the case at bar, the repeated instances in which papers were signed by Berridge for work not completed, the repeated attempts to dissuade sidewalk inspectors from inspecting Heinlin's work, the failure to act upon reports of work being completed improperly, or not being completed

at all, and the use of forms signed in blank by witness Johnson months after Johnson had left city employment, all provide ample evidence from which the jury could reasonably infer knowledge on the part of Berridge.

The second element of the charge that must be shown is that Berridge had the intent to deprive the owner of the use or benefit of the property. Clearly, the payments to Heinlin would permanently deprive the City of Evansville of the use or benefit of the money in question, and Berridge was aware of this fact. One is presumed to intend the natural consequences of one's acts. The requisite intent can be inferred from the facts presented at trial. *Capps* v. *State, supra.*

When reviewing the sufficiency of the evidence, this court cannot weigh the evidence nor determine the credibility of witnesses, but may look only to the evidence and the reasonable inferences drawn therefrom most favorable to the State. A conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Pruitt* v. *State* (1975), 166 Ind. App. 67, 333 N.E.2d 874. We examine circumstantial evidence not for the purpose of determining whether it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom which tends to support the finding of the trial court. *Pruitt* v. *State, supra.* Under these standards, we cannot say that Berridge's conviction was not supported by sufficient evidence.

## II.

Berridge next contends that the jury's verdict of guilty of conspiracy to commit theft by deception is not supported by sufficient evidence, and is thus contrary to law. The standards used to determine the sufficiency of the evidence in the offense

of conspiracy to commit a felony are the same standards as those set out above.

The elements of conspiracy to commit a felony are (1) uniting or combining; (2) with another person or persons; (3) for the purpose of committing a felony. IC 1971, 35-1-111-1 (Burns Code Ed.). *See Samuels* v. *State* (1974), 159 Ind. App. 657, 308 N.E.2d 879.

A conspiracy does not need to rest solely on words giving rise to an express agreement, but may be inferred from acts and conduct of the persons accused done in pursuant of an apparent criminal or unlawful purpose in common between them. *Lane* v. *State* (1972), 259 Ind. 468, 288 N.E.2d 258. In *Lane,* the Supreme Court quoted with approval the following statement:

> "It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performinng one part and another part of the same so as to complete it with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. . . ." 259 Ind. at 473, 288 N.E.2d at 261.

In the case at bar, Berridge signed the forms that made possible the payments to Heinlin, and Heinlin made the claims and cashed the checks that were issued to him for work he knew was not completed. Each thus performed his part of the object of exerting control over money belonging to the City so as to deprive the City of the use and benefit of that money, and thus diverting the money to Heinlin.

Berridge's repeated acts of signing forms which falsely stated that work had been completed, his attempt to discourage inspectors from checking the work, and the fact that he benefited insofar as Heinlin purchased political tickets from him, constitute sufficient evidence from which the jury could infer that Berridge (1)

united or combined (2) with Heinlin (3) for the purpose of committing a felony. This is especially so when considered in light of the direct testimony by Heinlin to the effect that in return for the money, he always bought tickets to the Democratic and Republican dinners. The jury could reasonably infer that Berridge was guilty beyond a reasonable doubt.

### III.

Berridge's third claimed error concerns the testimony of the alleged co-conspirator Robert Heinlin. He was allowed to testify, over objection, that he had pleaded guilty to a charge of conspiring with the defendant Berridge to defraud the city of $680.00. Berridge relies on the case of *Patton; Nickelson v. State* (1961), 241 Ind. 645, 175 N.E.2d 11, which holds that only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objects may be shown against the asserted co-conspirators who did not make the declarations or do the acts in question and an admission or confession of the existence of a conspiracy by one co-conspirator after he has been apprehended or arrested is not in furtherance of the conspiracy so as to be admissible against his fellow conspirators. This case was recently cited with approval in *Smith v. State* (1974), 159 Ind. App. 431, 307 N.E.2d 875. See Annot., 4 A.L.R.3d 671 (1965).

Many of the cases on this subject, but by no means all, specifically rely on the hearsay objection as the basis for the rule. In most cases, the hearsay objection would be proper, but we do not believe that that is the only basis for the rule.

In *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, hearsay evidence was defined as testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. The court in *Patterson*

made it clear that there was no reason to exclude statements made out of court on the basis of the hearsay objection when the declarant was in court and available for cross-examination. Thus, while certain statements may be hearsay, they will not necessarily be objectionable on that ground if the declarant can be made available for trial.

This does not mean, however, that all such evidence is *material* to the issue of defendant's guilt. The problem is best stated in *United States* v. *Toner* (3rd Cir. 1949), 173 F.2d 140, wherein the court said:

> "From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore, Evidence § 1171 *et seq.* (3d ed. 1940).
>
> "The foundation of the counter-vailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. We think that the charge given upon this point was contrary to that rule and inadvertently, of course, deprived the defendant of a very substantial protection to which he was entitled." (footnotes omitted) 173 F.2d at 142.

We conclude that statements or admissions made by the co-conspirators outside the scope of the conspiracy (as above discussed) are not material, and thus, are not admissible as *direct proof* of the conspiracy, although it is not technically objectionable under our hearsay rule.

This does not mean, of course, that such evidence cannot be admitted for other purposes under an appropriate limiting instruction. In the usual case, such a statement would be admissible for impeachment purposes if a foundation is laid and a proper limiting instruction given. Thus, a declarant who testified at trial in contradiction to a previous statement given to the authorities would not be able to gain an advantage over the State by suddenly changing his story on the witness stand [the State may impeach its own witness in this instance under IC 1971, 34-1-14-15 (Burns Code Ed.)]. If the statement, admission, or guilty plea was made under extenuating circumstances, the defense will have an opportunity to further explore those circumstances and explain the statement on re-cross examination. The limiting instruction should make clear to the jury that they are to consider these subsequent statements or admissions only as impeaching evidence against the surprise testimony of the State's witness.

In the case at bar, the alleged co-conspirator Heinlin denied on cross-examination that he had ever conspired with Berridge to defraud the city of $680.00. On redirect the State sought to impeach this testimony by asking the witness whether he had ever pleaded guilty to the charge of conspiracy to defraud the city of $680.00. This was a proper impeaching question. After much discussion of the merits of the question, and further redirect and re-cross questions, the jury was explicitly instructed that "the questions which follow with reference to . . . and that you just heard with reference to the witness' plea in the Vanderburgh Superior Court, are limited for impeachment purposes only, and should be considered by you only for impeachment purposes, and you are ordered not to consider them in determining the guilt or innocence of the defendant insofar as the statements that are covered here go." (Omission in the record). This was a proper limiting instruction, and as such, the evidence was properly admitted for the limited purpose stated.

Such a procedure was endorsed under similar circumstances in *Johnson* v. *State* (1964) 245 Ind. 295, 198 N.E.2d 373. We find no error in the admission of this evidence.

## IV.

Berridge's final contention is that the trial court erroneously admitted portions of the transcript of the guilty plea proceeding of the co-conspirator Heinlin. For the same reasons as are stated in the previous discussion, we find no error in the admission of this evidence.

After the State was given the opportunity to introduce the guilty plea of Heinlin on redirect examination, the defendant Berridge, on re-cross, attempted to explain the guilty plea. Several questions were answered in which Heinlin stated that no one had advised him about the nature of the plea, nor were any of the facts of the present case discussed with him. Berridge was clearly trying to establish that Heinlin had not implicated Berridge at the guilty plea proceeding. This was a proper procedure.

The State, however, was prejudiced by this testimony, since the transcript of the guilty plea proceeding clearly showed that Heinlin had been completely advised of his rights, and further, had admitted to defraud the City with the help of Berridge. This was in direct contradiction to his previous testimony that the guilty plea had nothing to do with Mr. Berridge. The State was entitled to impeach this testimony, and there was no error in their doing so. This entire procedure was followed by the above-quoted limiting instruction, and thus the jury had a right to consider that evidence for the limited purpose of impeachment. We note that all of this evidence became admissible only because the defendant elicited inaccurate testimony on cross-examination.

Finding no error, the judgment of the trial court is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 340 N.E.2d 816.