**Oscar SNOW, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 34A02–9003–CR–150.[1]**

Court of Appeals of Indiana,
First District.

Sept. 26, 1990.

1. This case was diverted from the Second District by direction of the Chief Judge.

 

Caroline B. Briggs, Flora, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Appellant-defendant Oscar Snow appeals his conviction of conspiracy to commit dealing in cocaine, a class B felony.

We affirm.

Arthur Biles agreed to act as an informant for the Kokomo Police Department. Biles was joined in the undercover narcotics investigation by another informant, Tyrone Cockrell. On May 19, 1988, the informants met police at a warehouse in Kokomo and were searched. The two were given cash with which to purchase drugs. Then Biles drove to the Elks Club bar, where he dropped off Cockrell, who went inside the club.

Gloria Herron, who was a runner for several drug dealers, approached the car in which Biles sat and asked him if he was looking for anything. Biles told Herron he was looking for one-sixteenth of an ounce of cocaine. Herron told Biles that she had packaged some cocaine with Snow earlier that day, and that Snow was in the bar. Biles went into the bar and approached Snow with his request, but Snow referred him to Herron. Herron agreed to ask Snow for drugs for Biles. Herron gave Snow money that Biles had given her, and Snow gave Herron a plastic bag of cocaine to deliver to Biles. To create the impression that she was getting drugs elsewhere, Herron went home. Snow and Biles began to talk and Snow asked Biles whether he and his companion were undercover police officers. Biles denied being a police officer.

After this conversation, Biles left the bar and waited for Herron in his car. She returned with the bag of cocaine which she had originally received from Snow at the bar, and which resembled those she had packaged with Snow earlier in the day. Cockrell joined Biles in his car and the two met police at the warehouse, where they

were searched by police to whom they delivered the narcotics.

After a trial, the jury found Snow guilty of conspiracy to commit dealing in cocaine.

Snow presents six issues for review:

I. Whether it was error to refuse Snow's instruction number 4 regarding circumstantial evidence.

II. Whether it was error to refuse Snow's instruction number 8 regarding missing witness Tyrone Cockrell.

III. Whether an adequate chain of custody was established with regard to the cocaine introduced at trial.

IV. Whether it was error to permit State's witness Gloria Herron to testify about Snow's role in the controlled drug buy.

V. Whether there was sufficient evidence to support the verdict.

VI. Whether Snow should have been discharged because he was not tried within one year from his arrest.

### I.

Snow's tendered instruction on circumstantial evidence included the following sentence:

Circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with the Defendant's guilt, wholly inconsistent with any reasonable theory of the Defendant's innocence, and are so convincing as to exclude a reasonable doubt of the Defendant's guilt.

Snow acknowledges that the court read final instruction number 13 which tracked language in the remainder of Snow's tendered instruction. Hence, Snow contends that the final instruction 13 was an incomplete statement of the law.

When we review a trial court's refusal to give an instruction, we consider 1) whether the tendered instruction was a correct statement of the law; 2) whether there is evidence to support giving the instruction; and 3) whether the substance of the tendered instruction was covered by other instructions given by the court. *Hicks v. State* (1989), Ind., 536 N.E.2d 496,

501. It is not reversible error for the trial court to refuse to give a tendered instruction when the substance of that instruction is covered adequately by another instruction given by the court. *Mack v. State* (1983), Ind., 457 N.E.2d 200. The court's final instruction number 10, which instructs the jury to find in favor of the defendant's innocence where the evidence allows reasonable inferences of both guilt and innocence, adequately covers the final sentence in Snow's tendered instruction. Both instructions inform the jury that before they vote to convict, they should be able to eliminate reasonable inferences of innocence.

Also, the evidence of conspiracy comprised both direct and circumstantial evidence. Herron testified that she had taken Biles' money to Snow and Snow had given her cocaine to take to Biles. This was direct evidence of an overt act in furtherance of the conspiracy, an essential element of the offense. *See* IND.CODE 35-41-5-2(b). Where there is both direct and circumstantial evidence of guilt, the trial court is not required to instruct the jury on circumstantial evidence. *Armour v. State* (1985), Ind., 479 N.E.2d 1294. There was no error in refusing to give Snow's tendered instruction.

### II.

Snow tendered the following instruction: "It is peculiarly within the power of the State of produce [sic] Tyrone Cockrell, who could have given material testimony on an issue in this case. The State's failure to call Tyrone Cockrell may give rise to an inference that his testimony would be unfavorable to it.

You should bear in mind that the law does not impose on a Defendant in a criminal case the burden of duty or calling [sic] any witnesses or producing any evidence." R. 60.

A missing witness instruction is not generally favored in Indiana. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239. An instruction calling for an adverse inference to be drawn from the failure to produce

certain evidence is appropriate only where the evidence withheld is material to the trial issues and not cumulative. *Id.* Also, the missing witness instruction is appropriate only when a witness is available to be produced by one party but not by the other. *Metcalf v. State* (1983), Ind., 451 N.E.2d 321; *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042; *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

■ Snow's presentation of this issue suffers from the same type of inadequacy that were found in other cases—there is no showing on the record that Tyrone Cockrell, who was in the service and stationed overseas, was available to the State but not available to Snow. *See Metcalf, supra; Gordy v. State* (1974), 262 Ind. 275, 315 N.E.2d 362; *Allen v. State* (1980), Ind. App., 406 N.E.2d 976, *affirmed*, 408 N.E.2d 122. Also Snow has not demonstrated that Cockrell's testimony would not have been cumulative of the other informant, Biles' testimony. Snow has failed to present error in the refusal of the instruction.

### III.

Snow argues that the State failed to demonstrate chain of custody of State's Exhibit A, the packet Biles delivered to the police. First, Snow contends that neither Gloria Herron nor Arthur Biles were called upon to identify the State's cocaine exhibit as that which had been given to them. Second, Snow argues that the officer who received two packets of cocaine from each of the two informants failed to explain how he distinguished them later.

■ The purpose of requiring an adequate chain of custody is to connect the evidence with the proper individual and to negate any substantial likelihood of tampering, loss, substitution or mistake. *Fendley v. Ford* (1984), Ind.App., 458 N.E.2d 1167. The State need only prove the chain of custody from the time the object came into possession of the police, *McAnalley v. State* (1987), Ind., 514 N.E.2d 831, 835, and if an item is subject to testing, such as drugs, chain of custody need be shown only through the time of testing.

*Smith v. State* (1983), Ind.App., 452 N.E.2d 160.

■ The record bears out the State's assertion that it established an adequate chain of custody for State's Exhibit A. Police searched both informants and their car prior to the controlled buy, and found no other narcotics. Biles testified Herron gave him a plastic bag secured with a twist tie, and that he gave Sgt. Salinas the bag which remained undisturbed while he had it. Sgt. Salinas testified receiving the bag from Biles, who said he had gotten it from Herron. Salinas also received a similar bag from Cockrell. Salinas testified he normally placed each baggie in its own manila envelope on which he wrote identifying information. At trial, he identified the manila envelope as well as the plastic bag he received from Biles. From this testimony, the jury could infer that Salinas followed the same procedure in Snow's case that he "normally" did. Salinas then testified he placed the baggie in another packet which he initialed, heat-sealed, and stored in his narcotics locker.

Lt. Ashenfelter described unlocking the narcotics locker and delivering the evidence to the laboratory. Once at the State Police lab, he delivered the package to a property clerk. He retrieved the item in a sealed condition and then delivered it to the Kokomo Police Department's locked evidence room.

Finally, Chemist Troy Ballard affirmed that he received the packet in a sealed condition from the evidence vault and re-sealed the packet after testing, when it was retrieved by Ashenfelter.

The chain of custody was not deficient because Biles did not positively identify the exhibit. He testified he received a packet from Herron and gave that packet to Salinas, who testified to receiving the exhibit from Biles. The relevancy of the exhibit was established.

### IV.

■ Snow argues for the exclusion of that part of Gloria Herron's testimony regarding conversations with Oscar Snow,

prior to presentation of a prima facie case of conspiracy, citing *Berridge v. State* (1976), 168 Ind.App. 22, 340 N.E.2d 816. Snow has not cited the record in support of his allegation of error. He suggests that all of Herron's testimony was inadmissible under *Berridge*. At the point at which trial counsel objected to Herron's testimony, the objection was to Herron's testimony "concerning this particular incident." Record at 191. Because the objection at trial was to all of Herron's testimony, not just to any out-of-court statements, it was insufficient to preserve error on the basis of Snow's argument on appeal. Therefore, any error is waived. *Bryant v. State ex rel. Van Natta,* (1980), Ind.App., 405 N.E.2d 583. In fact, Herron's testimony recounts her activities with Snow in preparing the cocaine for distribution, and their actions at the Elks Club on the evening in question. The rule in *Berridge, supra* does not apply to direct testimony of the co-conspirator. *Maynard v. State* (1987), Ind.App., 508 N.E.2d 1346; *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1121. Herron did not testify about out-of-court statements or declarations of Snow. As a co-conspirator, Herron was a competent witness against Snow. *Maynard, supra.* Snow has not demonstrated that Herron's testimony was inadmissible.

## V.

 Snow's issue here is presented as error in denying his motion for directed verdict. Of course, one who elects to present evidence after a denial of his motion for directed verdict made at the end of the State's case waives appellate review of the denial of that motion. *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339. Hence, we will determine whether the State's evidence was sufficient to sustain Snow's conviction. The elements of conspiracy are the intent to commit a felony, agreement with another to commit a felony, and an overt act in furtherance of the conspiracy. *Whittle v. State* (1989), Ind., 542 N.E.2d 981.

Snow attacks the sufficiency of the evidence on several fronts. First, he states the evidence only shows an association between himself and Herron, the seller of the cocaine, supporting only a suspicion of guilt. The evidence here went beyond demonstrating a mere association, however.

 It is not necessary to present direct evidence of a formal express agreement. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Survance v. State* (1984), Ind., 465 N.E.2d 1076.

 Herron's testimony that she worked as a runner for Snow, in exchange for cocaine, and that she and Snow prepared baggies of cocaine earlier in the day support an inference of an agreement to commit the felony of dealing in cocaine. Further evidence was supplied by Herron's relating that she went to Snow for cocaine when buyers requested the sale. She returned the money to Snow when the transaction was completed. Evidence that Snow did not "want" to deal with Biles upon his request does not diminish the evidence in support of a conspiracy, even if we could weigh such allegedly conflicting evidence. Rather, that evidence shows that Snow wanted to avoid the appearance of being involved in dealing drugs; it does not evidence any disinclination to deal in cocaine. The evidence actually supports an inference that Snow intended to deal in cocaine, because it shows knowledge of the illegality of the act, and an awareness that police often make controlled buys from unsuspecting dealers.

Snow makes much of the fact that Herron testified she did not meet Art Biles until August, 1988, although the transaction occurred in May of that year. However, the State attempted to rehabilitate its witness by pointing out the obvious mistake in her testimony. Herron also testified she made the delivery to Biles on May 19, 1988, and the jury was free to resolve the inconsistency.

Finally, Snow argues that he could not be found guilty of conspiracy because *Iannelli v. United States* (1975), 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616, requires that

one more person, in addition to the co-conspirators, be involved in the crime. Snow's reliance on Wharton's Rule is entirely misplaced.

Simplified, Wharton's Rule states

"An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission."

*Iannelli v. United States,* 420 U.S. at 773, n. 5, 95 S.Ct. at 1288, n. 5. The distinction in the instant case is readily discerned when one compares the instant substantive offense to the one which the federal courts in *Iannelli* were concerned. At 18 U.S.C. § 1955, it is a crime for five or more persons to conduct, finance, manage, supervise, direct, or own a gambling business prohibited by state law.

Under I.C. 35–48–4–1:

(a) A person who:

(1) knowingly or intentionally:

(A) manufactures;

(B) finances the manufacture of;

(C) delivers; or

(D) finances the delivery of; cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; or

(2) possesses, with intent to:

(A) manufacture;

(B) finance the manufacture of;

(C) deliver; or

(D) finance the delivery of; cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in cocaine or a narcotic drug ...

The offense of dealing in cocaine does not require more than one person for its commission. Wharton's Rule applies only to offenses which require concerted criminal activity. *Iannelli,* 420 U.S. at 785, 95 S.Ct. at 1293.

In short, the evidence, although much of it circumstantial, supported an inference that Herron and Snow had agreed to commit dealing in cocaine, by virtue of Herron's testimony that she had been a runner for Snow, that she and Snow had earlier packaged cocaine for sale, and that Snow had a ready supply of cocaine on him, which he gave to Herron with the understanding she would deliver it to Biles.

The evidence also supported the inference that Snow intended to deal in cocaine, considering this same evidence. Snow's sufficiency argument is unavailing.

## VI.

For Snow's final argument, he asserts that he should have been discharged because the State failed to try him within one year.

Indiana Criminal Rule 4(C) provides:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

Although a defendant is not required to take any affirmative action to obtain a trial date within the one-year period, *Huffman v. State* (1987), Ind., 502 N.E.2d 906, 908, he does have a duty to alert the court when a trial date has been set beyond the one-year period. If a trial date has been set beyond the proscribed limits and the defendant does not object at his earliest opportunity, he will be deemed to have acquiesced to the new date. *Decker v. State* (1988), Ind., 528 N.E.2d 1119.

The time limit is extended if the defendant actively seeks delay or acquiesces in any delay which results in a later trial date. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085.

 Snow was arrested on November 7, 1988, and his trial began November 9, 1989. The State does not argue that any delay in the start of Snow's trial should be attributed to Snow, thereby extending the date. Rather, the State contends that Snow should have objected at the pre-trial conference attended by Snow and Snow's counsel on October 24, 1989, when the court set Snow's trial for November 9. When the trial was set, Snow still had about two weeks in which he could have objected; hence, he may not argue that an objection would have been unavailing. Snow acquiesced to the setting of his trial later than one year after he was arrested, so he waived his right to be tried within one year.

Judgment affirmed.

RATLIFF, C.J., and MILLER, J., concur.