## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 08 2018, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Freeman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 8, 2018

Court of Appeals Case No.
49A02-1710-CR-2297

Appeal from the
Marion Superior Court

The Honorable
Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1604-F5-12303

**Kirsch, Judge.**

[1] Following a bench trial, David Freeman ("Freeman") was convicted of Level 5 felony child solicitation,[1] Level 5 felony conspiracy to commit child exploitation,[2] and Level 6 felony dissemination of material harmful to minors.[3] Freeman appeals and raises the two following restated issues:

> I. Whether the evidence was sufficient to support Freeman's conviction for child solicitation; and

> II. Whether the evidence was sufficient to support Freeman's conviction for conspiracy to commit child exploitation.

[2] We affirm.

## Facts and Procedural History

[3] During the period of time between February 2015 and March 2016, A.G. was eleven and twelve years old, and Freeman was eighteen and nineteen years old. *State's Ex.* 8. During this time, A.G. lived with her mother ("Mother") and exercised parenting time with her father ("Father"), sometimes splitting her time equally between them. *Tr. Vol. II* at 9, 15. A.G. first became acquainted with Freeman when A.G.'s step-sister ("Sister"), who was five years older than A.G., was communicating with Freeman via FaceTime on Sister's cell phone, and A.G. was sitting nearby. Another time, Sister's phone battery was dead, so

---

[1] *See* Ind. Code § 35-42-4-6(b).

[2] *See* Ind. Code §§ 35-42-4-4(b), 35-41-5-2.

[3] *See* Ind. Code § 35-49-3-3(a)(1).

Sister used A.G.'s phone to communicate with Freeman, and it was by this means that A.G. learned Freeman's phone number. A.G. and Freeman began communicating with each other on various phone apps and social media platforms, including FaceTime, Snapchat, and Instagram. A.G. initially believed Freeman was fifteen or sixteen years of age, but later learned he was older. A.G. told Freeman her age in one of their first conversations. *Id*. at 21.

[4] The two communicated by text and developed what A.G. believed was a romantic relationship. Freeman told A.G. that she was "pretty" and said things to A.G. such as "I love you" and "I can't wait until we can be together." *Id.* at 24, 29. On one occasion, A.G. told Freeman that another boy was "asking [her] out[,]" and Freeman told her to tell the boy that she already had a boyfriend. *Id*. at 29. Freeman told A.G. that he was grateful for her, that he was upset because he was not allowed to hold her and touch her, that he wanted her to know he would always want her, and that he would always be there for her. *State's Ex.* 1A at 24. A.G. told Freeman that she knew "a lot of older men are attracted to younger women," and she hoped that Freeman did not like her only because of her looks and her body, and he told her that he liked her "a lot more than that." *Id*. at 22.

[5] In the course of their ongoing conversations on social media, Freeman asked A.G. to send him photographs of herself, and she "repeatedly told him no" because she "was completely uncomfortable doing it." *Id.* at 24-25. When she would tell him no, "[h]e would get upset" and act in what she felt was a "passive aggressive way" by blocking her or not answering her. *Id*. at 25, 26.

A.G. eventually sent nude photos of herself "because [she] really liked [Freeman]" and believed that "the only reason he would ever like me" is if she sent the pictures. *Id*. at 27. A.G. estimated that she sent "more than fifteen" nude photographs of herself to Freeman, and, although she saved some of their text communications, she did not save any of the photographs. *Id.* at 28, 30, 31-34, 37; *State's Exs*. 3, 4, 5, 6. Freeman sent "probably about the same" number of pictures of his penis to A.G. *Tr. Vol. II* at 28, 51.

[6]    Freeman and A.G. talked about meeting in person, although they never did, other than seeing each other at church on a few occasions, and at those times they either did not speak to each other or only said "hi." *Id*. at 38. A.G. testified that "[Freeman] would talk about meeting me and having sex." *Id*. at 30, 50. Freeman wrote to A.G. stating, "I want to make love to you[,]" and for their relationship to go where he already knew it was going, "and that is love" and "after love, sex[.]" *State's Ex*. 1A at 23; *State's Ex*. 3 at 4.

[7]    In March 2016, Father discovered some text messages on A.G.'s phone between her and Freeman, including one or more requests from Freeman for A.G. to send him nude photographs of herself. Father contacted Freeman, telling Freeman that he was A.G.'s father. Freeman "volunteered that if this was in regards to A.G., that he would stop communicating with her." *Tr. Vol. II* at 11. Father asked Freeman how old he was, and Freeman said he was seventeen. *Id*. At some later date, Father discovered on A.G.'s phone more "inappropriate messages" between her and Freeman, and through online research, Father located a phone number for the Freeman household and

contacted Freeman's father. *Id.* at 12. Father learned through Freeman's father that Freeman was not seventeen years old, as he had said he was. Father also contacted Mother, the police, and the prosecutor's office. Mother also contacted and spoke with the police.

[8] Indianapolis Metropolitan Police Department ("IMPD") Detective David Miller ("Detective Miller") made a police report, and he contacted cybercrimes Detective Laura Smith ("Detective Smith"), who worked in the sex crimes division. Father provided Detective Smith with a screenshot of some of the communications with Freeman on A.G.'s phone. In a screenshot from July 2015, Freeman told A.G. that he was not jealous about her boyfriend anymore, and A.G. replied, "Great. Have fun being a perv and trying to get other 12 year olds to send you nudes." *State's Ex.* 7.

[9] Detective Smith interviewed A.G. and Father, and she collected various devices that A.G. had used to communicate with Freeman, including her phone, iPad, and a laptop. Father gave his consent to a forensic search, which was conducted by IMPD Detective Grant Melton ("Detective Melton"). Detective Smith also obtained and executed a search warrant on Freeman and his residence, recovering Freeman's iPhone and two iPods. She also interviewed Freeman.

[10] During his interview, Freeman stated that he knew A.G. was twelve years old and admitted that he asked A.G. to engage in sexual activity but denied that he intended to act on it. *Tr. Vol. II* at 50. He admitted that A.G. complied with

his request that she send him photographs and that she sent him one in shorts in which her bottom was arousing to him, so he complimented her and requested nudes, which she sent. *Id.* A.G. also sent photographs revealing her breasts. *Id.* at 51. Freeman admitted sending pictures of his penis to A.G.

[11] On April 5, 2016, the State charged Freeman with four counts: Count I, Level 5 felony child solicitation, alleging that Freeman knowingly or intentionally solicited A.G., who was under age fourteen, to engage in sexual intercourse; Count II, Level 5 felony conspiracy to commit child exploitation, alleging that Freeman asked A.G. to take a nude photo of herself and send it to him on his phone, which she did; Count III, Level 6 felony possession of child pornography, alleging that Freeman knowingly or intentionally possessed a digitized image that depicted or described sexual conduct by a child who Freeman knew to be less than eighteen years of age; and Count IV, Level 6 felony dissemination of material harmful to minors, alleging that Freeman knowingly or intentionally disseminated to A.G. matter harmful to minors by sending an image of his penis to A.G. *Appellant's App.* at 27-28. Freeman waived his right to a jury trial, and on April 26, 2017, a bench trial was held.

[12] Prior to trial, the parties stipulated to a number of facts, including that Freeman was, at the relevant times, nineteen and twenty years old and A.G. was eleven and twelve years old, and that Freeman was aware of A.G.'s age throughout the entirety of their communications. *State's Ex.* 8. The parties also stipulated to the admission of certain evidence, including printed reports that were produced following the forensic examination of A.G.'s and Freeman's

respective cell phones and other devices that the two had used to communicate with each other. *Id.*

[13] At trial, A.G. was asked about her conversations with Freeman in which they talked about having sex. A.G. was asked, "Did he ask you to have sex?" and she replied, "Yes." *Id.* at 30. She said Freeman's request made her feel "[u]ncomfortable" but she believed that "it was the only way he would ever like me." *Id.* at 30. The trial court inquired further on the subject as follows:

> Q: I'm sorry. By sex in your terminology are you referring to sexual intercourse or oral sex? What are you -- What do you take sex to be?
>
> A: When two people have sex.
>
> Q: Which sexual act are you referring to that you assumed you were talking about?
>
> A: Just sex in general.
>
> Q: Intercourse?
>
> A: Yeah.
>
> Q: Okay.
>
> A: I don't think it was ever specific.

*Id.* at 30-31.

[14] Detective Smith testified that after she became involved in the case, she submitted A.G.'s phone and other devices for forensic examination and that, pursuant to a search warrant of Freeman's home, she recovered devices he had used and also submitted those for forensic examination. Detective Smith also testified to interviewing Freeman. She said that, initially, Freeman said that he thought A.G. "was fifteen or sixteen years old[,]" but later, when confronted with the text messages, "he conceded that yes, he knew she was twelve years old at the time he was communicating with her." *Id*. at 48-49. Freeman admitted that he asked A.G. for naked pictures of herself and that she sent him naked pictures. *Id*. at 89, 96. Freeman said that the first picture A.G. sent to him was her with shorts on, which was "arousing" to Freeman, so he complimented A.G. and asked her to send him more, which she did, including a "full nude." *Id*. Freeman admitted to sending A.G. pictures of his penis, and he estimated that they exchanged photograph more than ten times. When Detective Smith asked Freeman if he had asked A.G. to engage in sexual activity, Freeman said "Yes" but continued that he "wouldn't actually have done it." *Id*. at 50, 94.

[15] During his interview with Detective Smith, Freeman indicated that he had received at least some pictures from A.G. via Snapchat on his iPod. *Id*. at 95. In her experience, Detective Smith knew that some people, in particular, often juveniles, had been known to take a picture, using a separate device, of the sent photograph, so that the Snapchat sender would not be alerted that a screenshot had been taken. With that in mind, Detective Smith asked Freeman whether he

had ever taken pictures of any of the photos that A.G. had sent him, and he replied that he had not. *Id*. at 91. However, during subsequent forensic examination of Freeman's iPhone, a photo of A.G. in a towel was found on it.[4] *Id*. at 81, 91, 95. Detective Melton, who performed the forensic examination of the devices, explained that Freeman had received the image of A.G. in a towel on another handheld device and that Freeman had used his iPhone to take a picture of that image. *Id*. at 82. Detective Smith said that, during the interview, Freeman provided her with passcodes for his iPhone and two iPods, and while IMPD eventually received results for the forensic examination of Freeman's iPhone, the passcodes given for his iPods were not correct, and IMPD was not able to "get into" the iPods. *Id*. at 51.

[16] At the trial court's request, the parties thereafter submitted written argument in support of their respective positions, and, subsequently, the trial court entered judgment of conviction as to Counts I, Level 5 felony child solicitation; Count II, Level 5 felony conspiracy to commit child exploitation; and Count IV, Level 6 felony dissemination of material harmful to minors. The trial court entered an acquittal as to count III, Level 6 felony possession of child pornography. Following a September 2017 sentencing hearing, the trial court sentenced Freeman to five years on Counts I and II and to two years on Count IV, ordering that the sentences be served concurrently, but suspending the three

---

[4] Although the forensic examination of Freeman's phone revealed other images of exposed female body parts, Detective Melton indicated that the only image that he was "able to identify of A.G. on [Freeman]'s phone" was the one of her in a towel. *Tr. Vol. II* at 81; *State's Ex* 2A at 15-18.

sentences to probation, which included a period of home detention. *Appellant's App. Vol. II* at 18. Freeman now appeals.

## Discussion and Decision

[17] Freeman contends that the State failed to present sufficient evidence to convict him of Level 5 felony child solicitation and of Level 5 felony conspiracy to commit child exploitation.[5] When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Kuypers v. State*, 878 N.E.2d 896, 898 (Ind. Ct. App. 2008), *trans. denied*; *Riehle v. State*, 823 N.E.2d 287, 292 (Ind. Ct. App. 2005), *trans. denied*. We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence, and we will uphold the conviction if there is substantial evidence of probative value to support it. *Riehle*, 823 N.E.2d at 292. "We will affirm unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Delagrange v. State*, 5 N.E.3d 354, 356 (Ind. 2014) (quoting *Drane v. State*, 867 N.E.2d 144, 146-67 (Ind. 2007)).

## I.    Child Solicitation

[18] Freeman argues that the evidence was insufficient to convict him of child solicitation. Indiana Code section 35-42-4-6(b) provides, in relevant part:

---

[5] Freeman does not challenge his conviction for Level 6 felony dissemination of matter harmful to minors, asking for reversal only of the child solicitation and conspiracy to commit child exploitation convictions. *Appellant's Br*. at 13.

> A person eighteen (18) years of age or older who knowingly or intentionally solicits a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age, to engage in sexual intercourse, other sexual conduct [], or any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person, commits child solicitation, a Level 5 felony.

The term "solicit" as used in the section, means "to command, authorize, urge, incite, request, or advise" a child to commit the act. Ind. Code § 35-42-4-6(a). However, "[t]here is no requirement that a solicitor actually complete the act of meeting with his or her victim to commit the crime of child solicitation." *Kuypers*, 878 N.E.2d at 899. "Furthermore, the statute does not require that the solicitor inject details into the conversation such as the time and place of the act." *Id*. Here, to convict Freeman as charged, the State was required to prove that he knowingly or intentionally solicited A.G., who was less than fourteen years of age, to engage in sexual intercourse. *Appellant's Confid. App. Vol. II* at 27.

[19] Freeman's argument on appeal is that, although he and A.G. had text conversations that included discussions of intimacy and sex, "[t]he record is unclear as to what [he] intended when he used the term 'sex'" because no specific sex act was discussed. *Appellant's Br*. at 7, 9. "Given the lack of specificity," Freeman claims the State did not prove that he intended to have sexual intercourse with A.G., and his conviction must be reversed. *Id*. at 10. We disagree.

In her testimony, A.G. testified that "[Freeman] would talk about meeting me and having sex." *Id*. at 30, 50. Freeman admitted to Detective Smith that he asked A.G. to engage in sexual activity, but told Detective Smith that he "wouldn't actually have done it." *Id*. at 50, 94. The text messages admitted at trial included Freeman's messages to A.G. stating, "I want to make love to you[,]" and "I want this to go where I already know it's going and that is love" and "after love, sex[.]" *State's Ex*. 1A at 23. He also said, "Surprised you were cool w sex this early. You must really like me … [.]" *Id*. The trial court specifically asked A.G. about her understanding of the term sex and whether it meant "[i]ntercourse," and she responded, "Yeah." *Tr. Vol. II* at 30-31. She thereafter added, "I don't think it was ever specific." *Id*. A.G.'s testimony reflects her belief and understanding that Freeman's texts about sex and making love meant sexual intercourse or, at the very minimum, included sexual intercourse. "The absence of details does not make him any less guilty." *Kuypers*, 878 N.E.2d at 899. Based on the record before us, we find that the State presented sufficient evidence to sustain his conviction for child solicitation as charged.

## II.  Conspiracy to Commit Child Exploitation

Freeman next argues that the evidence is insufficient to support his conviction for Level 5 felony conspiracy to commit child exploitation. Indiana Code section 35-42-4-4(b)(1) provides, in relevant part, that a person who knowingly or intentionally produces, photographs, or creates a digitalized image of any

performance or incident that includes sexual conduct[6] by a child under eighteen years of age commits Level 5 felony child exploitation. A person conspires when, with the intent to commit a felony, the person agrees with another person to commit the felony. Ind. Code § 35-41-5-2(a). The State must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement.[7] Ind. Code § 35-41-5-2(b). In Indiana, the crime of conspiracy to commit an offense is a separate offense from the underlying offense. *Coleman v. State*, 952 N.E.2d 377, 382 (Ind. Ct. App. 2011). "The agreement itself constitutes the criminal act." *Id*.

[22] An agreement can be inferred from circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. *Hightower v. State*, 866 N.E.2d 356, 368 (Ind. Ct. App. 2007), *trans. denied*. "'It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense.'" *Id.* at 368-69 (quoting *Dickenson v. State,* 835 N.E.2d 542, 552 (Ind. Ct. App. 2005)), *trans. denied.*

[23] Here, the State's charging information alleged:

> [T]hat Freeman did agree with another person, A.G.[,] to commit the felony of Child Exploitation, which is to knowingly or intentionally produce[] a performance or incident that

---

[6] "Sexual conduct" includes exhibition of the uncovered genitals or uncovered female breast, intended to satisfy or around the sexual desires of any person. Ind. Code § 35-42-4-4(a)(4).

[7] We note that the State does not have to prove that the felony was actually committed or even attempted. *Riehle v. State*, 823 N.E.2d 287, 293 (Ind. Ct. App. 2005), *trans. denied*.

included sexual conduct by A.G. and/or disseminate an image of a child under the age of eighteen, said sexual conduct being described as a nude photograph of A.G. and the following overt act was performed in the furtherance of said agreement: [] Freeman requested A.G. take a nude photo of herself and send it to [] Freeman, A.G. took the photo and sent the image[.]

*Appellant's Confid. App. Vol. II* at 27-28. On appeal, Freeman's argument is that "[i]n essence, the State alleges that Freeman engaged in conspiracy with A.G., making A.G. both the victim and the co-conspirator[,]" and that "A.G. certainly did not agree, nor did she have the intent, to commit the criminal offense of child exploitation of herself."[8] *Appellant's Br.* at 11-12.

[24] While we agree that A.G. may not have intended to commit "the criminal offense of child exploitation," the evidence showed that Freeman asked A.G. to take nude pictures of herself and send them electronically to Freeman, and that A.G., at Freeman's requests, intended to, and did, take pictures of herself in nude and semi-nude states, and she sent them to Freeman. That is, she agreed with him that she would take and send him the pictures.[9]

---

[8] Freeman also argues that under what is known as Wharton's Rule, his conviction must be reversed. *Appellant's Br.* at 12. "Simplified, Wharton's Rule states: 'An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.'" *Snow v. State*, 560 N.E.2d 69, 75 (Ind. Ct. App. 1990), *trans. denied*. Because the offense of child exploitation does not require more than one person for its commission, we decline to apply Wharton's Rule to the present case. *See id.* (defendant was convicted of conspiracy to commit dealing in cocaine, and appellate court declined to apply Wharton's Rule because "[t]he offense of dealing in cocaine does not require more than one person for its commission").

[9] Although A.G. at age twelve may not have known that doing so was criminal, their text message conversations reflect that A.G. knew that she was "seven years younger" than Freeman, that he was "in

Freeman asserts, without citation to authority, "[T]he victim to a crime cannot also be the co-conspirator to the crime." *Appellant's Br.* at 11. The State argues that the language of the conspiracy statute does not support Freeman's position, particularly referring to Subsection (c) of the statute, which reads:

> It is no defense that the person with whom the accused person is alleged to have conspired:
>
> (1) has not been prosecuted;
>
> (2) has not been convicted;
>
> (3) has been acquitted;
>
> (4) has been convicted of a different crime;
>
> (5) cannot be prosecuted for any reason; or
>
> (6) lacked the capacity to commit the crime.

Ind. Code § 35-41-5-2(c). The State offers that being a victim is "consistent with" Subsection (c)'s language, providing that it is not a defense to conspiracy if the other person to the agreement cannot be prosecuted, has not been convicted, or lacked the capacity to commit the offense, and, the State argues, under the plain language of the statute, A.G.'s status as a victim is not a bar to

college," that society would judge their relationship, and they would have to wait "awhile" before they could "do anything serious." *State's Exs.* 1A at 6, 2A at 9, 3 at 1.

prosecution. *Appellee's Br.* at 15. We agree that Indiana Code section 35-41-5-2 does not preclude the State from prosecuting Freeman for conspiring with A.G. to commit a felony.[10]

[26] As to whether the evidence supports the conspiracy conviction, A.G. testified that Freeman asked her to take nude photos of herself and send them to him, and Freeman admitted to Detective Smith that he asked A.G. to take and send nude photos of herself to him. A.G. agreed to take and send the pictures of herself to Freeman, and there is no dispute that, in furtherance of the agreement, A.G. eventually complied and, on multiple occasions, electronically transmitted the images of herself to Freeman via Snapchat or another social media platform. "The crime of conspiracy to commit a felony has three elements: '1) the intent to commit a felony, 2) an agreement with another person to commit a felony, and 3) an overt act, performed by either the defendant or the person with whom the defendant has entered into the agreement.'" *Owens v. State*, 929 N.E.2d 754, 756 (Ind. 2010) (citing I.C. § 35-41-5-2 and quoting *Jester v. State*, 724 N.E.2d 235, 239 (Ind. 2000)). We find that the evidence presented supported a determination that Freeman, with the intent to commit a felony, entered into an agreement with A.G. for her to

---

[10] We note that whether allowing a defendant to conspire with a victim is advisable is a matter for the legislature. *See State v. Thakar*, 82 N.E.3d 257, 261 (Ind. 2017) (in recognizing the existence of inconsistent treatment of minors in statutes, Court recognized that "[w]hether this inconsistent statutory treatment of minors aged 16 and 17 is advisable with respect to sexually-related activity is a matter for the legislature, and whether [defendant]'s alleged conduct violated the Dissemination Statute is a matter for the jury").

produce, photograph, or create a digitalized image of herself that includes sexual conduct and that A.G. performed an overt act in furtherance of the agreement by taking and transmitting the pictures to Freeman. Ind. Code §§ 35-42-4-4(b)(1), 35-41-5-2. Accordingly, we find that the evidence presented was sufficient to support Freeman's conviction for Level 5 felony conspiracy to commit child exploitation.

[27] Affirmed.

[28] Vaidik, C.J., and Riley, J., concur.