Richard WHITEHAIR, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A05–9403–CR–110.

Court of Appeals of Indiana.

July 31, 1995.

---

Roscoe Stovall, Jr., Mooresville, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Richard Whitehair appeals from his conviction of receiving stolen property, a class D felony. We affirm.

Whitehair raises seven issues for our review, which we consolidate and restate as follows:

1. whether the trial court erred in admitting evidence of extrinsic acts of misconduct;

2. whether the trial court erred in denying Whitehair's two motions for mistrial;

3. whether the trial court abused its discretion in allowing the State to cross-examine a witness regarding Whitehair's discharge from the Navy;

4. whether the trial court erred in refusing to allow Whitehair to remove a juror for cause;

5. whether the trial court erred when it allowed the State to amend the information; and,

6. whether the trial court erred in refusing Whitehair's tendered instruction on missing witness testimony.

The facts most favorable to the judgment of conviction are as follows. Morgan County Sheriff's Deputy Larry Sanders received information from a man named Donald Somers that a stolen Honda 250 "quad," a four-wheel all-terrain-vehicle ("ATV"), of reddish color,

was in Whitehair's garage. The description of the ATV matched the description of an ATV which was stolen within the preceding two weeks. Acting on Somers' tip, Sanders went to the Whitehair residence to see if the VIN number on the ATV in Whitehair's garage matched that of the stolen vehicle.

Whitehair's wife, Erica Whitehair, was at home when Sanders arrived. Mrs. Whitehair escorted Sanders to the garage where he obtained the VIN numbers from the vehicle. Although the ATV in Whitehair's garage was not the stolen ATV that Sanders was originally investigating, further investigation revealed that it had been stolen from a residence in Putnam County in November of 1991.

Sanders returned to the Whitehair residence, took possession of the ATV, and asked Mrs. Whitehair to have Whitehair contact him. Whitehair contacted Sanders the next day and was advised of his *Miranda* rights. Whitehair informed Sanders that he had purchased the ATV back in March or April of 1991, and that he had paid approximately $2,100.00 in cash and a Yamaha 250 for the ATV. Whitehair said that he did not have a title for the ATV, but that he did have a receipt. Sanders noted that Whitehair claimed to have purchased the vehicle approximately eight months prior to when it was reported stolen.

Whitehair claimed that he did not know the name of the person that had sold him the ATV, and informed Sanders that the receipt for the ATV was at home, in a box. When Sanders asked Whitehair to go get it, Whitehair refused, saying that his wife was not at home and that he did not have a key to get in the house. Sanders then called the Whitehair residence and Mrs. Whitehair was at home. When Sanders hung up the phone, he informed Whitehair that his wife was at home and asked if they could go to the house and get the receipt. Whitehair responded by saying that he did not know where the receipt was. Whitehair never produced a receipt for the ATV.

On August 13, 1992, Whitehair was charged with one count of receiving stolen property. Specifically, the information alleged that Whitehair "did knowingly retain the property [of] Curtis Sinclair, to wit: 1988 Honda TRX 250R ..., said property having been the subject of a theft in Putnam County, Indiana on or about the 16th day of November 1991." Record, p. 8. On January 12–13, 1994, a jury trial was conducted. At trial, Mr. Sinclair testified that the ATV at issue in this case was the one that had been stolen from his home. The jury returned its verdict finding Whitehair guilty of receiving stolen property.

On February 10, 1994, Whitehair was sentenced to 1½ years in the Morgan County Jail. The sentence was suspended on the condition that Whitehair serve a thirty day jail sentence, followed by ninety days of work release and sixty days on home detention, and that Whitehair comply with the terms of probation for a three year probationary period.

Additional facts will be provided as necessary for the resolution of the issues presented on appeal.

## I

The first issue Whitehair raises for our review is whether the trial court erred in admitting evidence of extrinsic acts of misconduct. Specifically, Whitehair contends that the trial court committed reversible error in allowing the State to introduce evidence regarding stolen tires found in his garage when the stolen ATV was discovered. Whitehair advances a number of arguments in support of his contention that the trial court erred, each of which we will address in turn.

On appeal, we will reverse a trial court's decision to admit evidence only on a showing of manifest abuse of discretion which results in the denial of a fair trial. *Shaw v. State* (1992), Ind.App., 595 N.E.2d 743, 747, *reh'g denied.* "To constitute an abuse of discretion, the trial court's decision must be one which is clearly against the logic and effect of the facts and circumstances before the court." *Stone v. State* (1989), Ind.App., 536 N.E.2d 534, 538, *trans. denied.*

Prior to trial, Whitehair filed a motion in limine which sought the exclusion of evidence

pertaining to, among other things, extrinsic acts of misconduct. At the hearing on the motion in limine, the State argued in pertinent part that evidence regarding White-hair's possession of stolen tires was admissible under two theories. The State argued first that the evidence went to show that Whitehair and one of the State's witnesses, Somers, were each part of an organized theft ring engaged in the theft and resale of property. The State also argued that evidence regarding the stolen tires was admissible to show that Whitehair had knowledge that the ATV was stolen. After extensive argument, the trial court ruled in pertinent part that the State could introduce evidence regarding the stolen tires to show Whitehair's state of mind, i.e., his knowledge. The trial court subsequently reversed its ruling, however, pending another hearing outside the presence of the jury.

During the course of the trial, Somers testified that he had accompanied one Tory Brawner to Whitehair's home. Somers testified that Whitehair showed him the ATV and that Whitehair and Brawner told him that the ATV was stolen. When the State asked Somers why the men would not have hidden such information from him, Somers responded "Because they trusted me and didn't think much about it, I don't know." Record, p. 229. At this point, defense counsel objected to the introduction of evidence of extrinsic acts of misconduct, and a hearing was conducted out of the jury's presence. The State argued that the evidence was admissible to show the nature of the relationship between Somers, Brawner, and Whitehair in order to demonstrate why Whitehair would tell Somers that the ATV was stolen. The trial court ruled that the evidence was admissible for that purpose.

Somers testified that he knew Whitehair through Brawner, that he (Somers) and Brawner had stolen things together before, and that Whitehair and Brawner told him that the ATV was stolen. The following colloquy then transpired:

"PROSECUTOR: Why would [Brawner] tell you something like that, it could get him in trouble didn't [sic] it?

MR. SOMERS: Yeah, when we did the tires he didn't think too much about it or something, I guess.

PROSECUTOR: Since you guys stole stuff together he wasn't worried about telling you things?

MR. SOMERS: Yeah.

PROSECUTOR: You wouldn't have turned him in at that time would you?

MR. SOMERS: Probably not.

PROSECUTOR: Because you were stealing things too?

MR. SOMERS: I was a lookout yeah." Record, pp. 244–45. Somers subsequently testified that he and Brawner had been picked up for stealing some tires and a dirt bike. Somers also testified that he later went to the police station and identified the ATV at issue as the same one he had seen in Whitehair's garage.

The State then called its next witness, Deputy Sanders. In pertinent part, Sanders testified that when he was at the Whitehair residence checking the VIN numbers on the ATV, Mrs. Whitehair told him that he could look at anything in the garage that he wanted. Sanders observed some tires and rims (collectively, "the tires"), partially covered up with a blanket. Whitehair's counsel objected to this testimony, incorporating his arguments made on the motion in limine, and arguing that the evidence regarding the stolen tires was not admissible. The State argued that evidence regarding the stolen tires was admissible to show that Whitehair had knowledge that the ATV was stolen, i.e., that Whitehair "knowingly" possessed stolen property. The trial court overruled White-hair's objection, but indicated it would admonish the jury regarding the limited purpose for which the evidence regarding the tires was being admitted. Sanders testified that he believed the tires were the same tires described in a stolen property report he had taken two days earlier. Sanders noticed that the back of the tires had "Tory rear" and "Danny rear" written on them, making him think of Tory Brawner and Danny Long. Sanders later confirmed that the tires were stolen. The trial court admonished the jury that the evidence of Whitehair's possession of stolen tires was admissible only to show his

intent and/or knowledge of possession of stolen property and that it should be considered only for those reasons.

■ Whitehair argues first that the trial court erred in admitting evidence regarding the stolen tires because such evidence was not admissible under Ind. Evidence Rule 404(b). Indiana Evidence Rule 404(b) provides:

"(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,* provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

Evid.R. 404(b) (emphasis added).[1] Under the rule, if the evidence of uncharged misconduct is offered solely to prove "the 'forbidden inference'—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those bad acts . . . ," such evidence is inadmissible. *Wickizer, supra* n. 1, 626 N.E.2d at 797 (quoting *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129). Where, however, the evidence is offered for one of the permissible purposes outlined in Evid.R. 404(b) and it offers some proof of the existence of an element of the charged offense, for example the defendant's intent, such evidence may be admissible. *Id.* at 797, 799.

■ Whitehair argues that the evidence regarding the stolen tires was not admissible under Evid.R. 404(b) because he did not affirmatively put his intent or knowledge in issue at trial. *See id.* In *Wickizer,* the

supreme court provided guidance on the application of Ind.Evid.R. 404(b) in future cases, examining in particular the intent exception of the rule. *Id.* at 796–97. The court discussed whether the intent exception found in Evid.R. 404(b) should be given a broad or a narrow interpretation. *Wickizer,* 626 N.E.2d at 797. The court observed that, although the State must be allowed to present evidence of the defendant's intent, using prior misconduct evidence for that purpose carried the risk of the defendant being convicted based primarily on grounds of bad character. *Id.* The court noted that a broad construction of the intent exception could overwhelm the rule's primary objective of excluding evidence of other crimes, wrongs, or acts. *Id.* The supreme court wrote:

"Mindful of the variety of judicial perspectives regarding the proper role of prior conduct evidence in the ascertainment of truth, we conclude that Indiana is best served by a narrow construction of the intent exception in Evid.R. 404(b). It does not authorize the general use of prior conduct evidence as proof of the general or specific intent element in criminal offenses.

\* \* \* \* \* \*

The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. The trial court must then determine whether to admit or exclude such evidence depending upon

---

1. Because the Indiana Rules of Evidence became effective on January 1, 1994, the new rules were applicable at Whitehair's trial.

   Our supreme court first adopted Federal Rule of Evidence 404(b) with regard to sex offense cases in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. *Dockery v. State* (1994), Ind., 644 N.E.2d 573, 577 (writing that because Dockery's case

did not involve a sex offense, *Lannan* and Federal Rule of Evidence 404(b) did not apply). The only difference between Indiana's rule and the federal rule is that the Indiana version of 404(b) omits the word "opportunity" in the list of other purposes for which the other acts evidence may be used. *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 797 n. 2.

whether 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion or the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.' Evid.R. 403."

*Wickizer,* 626 N.E.2d at 799. Thus, pursuant to *Wickizer,* we must determine, whether Whitehair put his knowledge of the stolen character of the ATV in issue.[2]

The record reveals that when questioned by Sanders, Whitehair informed Sanders that he had purchased the ATV for $2,100.00 in cash and a Yamaha 250. Whitehair stated that he did not have a title for the ATV, but that he did have a receipt. The record further reveals that opening statements by defense counsel included the statement that "The judge did instruct you that the charge must be proved by the evidence introduced during trial and that is that my client has to be proven guilty of knowing [sic] and intentionally retaining the property of another person, that has been the subject of a theft...." Supp. Record, p. 4. The State argues that Whitehair's statements to Sanders, combined with opening remarks from the defense, put Whitehair's knowledge that the ATV was stolen in issue. Whether from this evidence it can be said that Whitehair affirmatively put his knowledge in issue is a close call. Nonetheless, we are persuaded by the State's contention that the effect of Whitehair's statements to police, combined with counsel's opening remarks, was to place in issue Whitehair's knowledge that the ATV was stolen. *See Butcher v. State* (1994), Ind.App., 627 N.E.2d 855, *reh'g denied; cf. Levi v. State* (1994), Ind.App., 627 N.E.2d 1345 (trial court erred in admitting extrinsic evidence of defendant's prior burglary conviction during the State's case in chief), *trans. denied.*

Whitehair's voluntary statement to Sanders, combined with counsel's emphasis to the jury that the State had to prove that Whitehair had knowingly or intentionally possessed the subject property, combined to create the

assertion that Whitehair had innocently paid $2,100 and a Yamaha 250 for an ATV which turned out to be stolen. Under these circumstances, the State was entitled to use evidence of extrinsic acts of misconduct to show that Whitehair was not a naive purchaser, but rather knew that the ATV at issue had been the subject of a theft. Thus, the threshold requirement for admitting the evidence under Evid.R. 404(b) was satisfied. *See Butcher, supra.*

■ Whitehair argues next that the trial court erred because the presence of the stolen tires was not relevant to his knowledge of the stolen character of the ATV. We disagree. "Relevancy is the logical tendency of evidence to prove a material fact. It is a question for the discretion of the trial judge and his decision will be reversed only where clear abuse is shown." *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682. Evidence which tends to prove a material fact is admissible, "even if the tendency to provide such proof is slight." *Bolin v. State* (1994), 634 N.E.2d 546, 549.

Whitehair cites *James v. State* (1993), Ind. App., 622 N.E.2d 1303, in support of his position that the stolen tire evidence was not relevant. *James* is distinguishable from the present case. In *James,* the issue was whether evidence of the defendant's *prior* drug conviction, drug related activities, and probationary status was relevant to proving his intent to possess drugs. *Id.* at 1307–11. The present case, however, involves the *concurrent* possession of stolen property. We find Whitehair's concurrent possession of the stolen tires was relevant to proving he knowingly or intentionally possessed a stolen ATV.

■ As Whitehair observes, however, not all relevant evidence which meets the requirements of Evid. R. 404(b) is admissible. The trial court also must apply the balancing test set forth in Evid.R. 403:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-

---

2. Notwithstanding its use of the phrase "in trial," in analyzing the case before it, the *Wickizer* court also took into consideration the defendant's pretrial responses to police questions. *Id.* at 800. Accordingly, we will take into account Whitehair's voluntary responses to police questioning in determining if he put his knowledge in issue.

dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

Evid.R. 403. Whitehair argues that the evidence regarding the stolen tires should not have been admitted because it fails this balancing test. We disagree. The evidence regarding the stolen tires was highly probative, and the trial court's admonishment to the jury limited the danger of unfair prejudice. Finally, we disagree with Whitehair's contention that the trial court did not perform the Evid.R. 403 balancing test. The record reveals a detailed discourse between the trial court and counsel regarding the application of the balancing test to the disputed evidence. Although the trial court did not announce its decision under the Evid.R. 403 balancing test at the conclusion of this discourse, the court's decision is inherent in its subsequent ruling to admit the evidence. We find no error.

The disputed evidence was admissible under Evid.R. 404(b) and 403.[3] The trial court did not abuse its discretion in allowing the State to introduce evidence regarding the stolen tires found in Whitehair's garage.

## II

The next issue raised for our review is whether the trial court erred in denying Whitehair's two motions for mistrial. Whitehair first sought a mistrial based on an alleged violation of the trial court's separation of witnesses order. Whitehair again sought a mistrial when, after the jury had reached a verdict, but prior to the verdict being returned, it came to the court's attention that a juror had inaccurately responded to a question on the jury questionnaire regarding prior arrests.

■ Whether to grant or deny a motion for mistrial is a decision committed to the discretion of the trial court. *Poling v. State* (1987), Ind., 515 N.E.2d 1074, 1081, *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1646, 104 L.Ed.2d 161. We will reverse the trial court's ruling only where the trial court has abused its discretion. *Jackson v. State* (1988), Ind., 518 N.E.2d 787, 789. The denial of a motion for mistrial is to be upheld unless the defendant demonstrates that he was placed in a position of undue peril. *Morgan v. State* (1981), 275 Ind. 666, 419 N.E.2d 964, 967. "A mistrial is an extreme sanction warranted only when no other cure can be expected to remedy the situation." *Jackson, supra.*

■ We address first whether the trial court abused its discretion in denying Whitehair's motion for mistrial based on the alleged violation of the trial court's separation of witnesses order.

During a pretrial hearing, the trial court granted a separation of witnesses order. During the State's direct examination of Somers, the prosecutor referred to defense counsel's opening statement asking, "Donald you don't know this but the Defendant's attorney told everybody about it, you've had some trouble with the law, haven't you?" Record, p. 223. Whitehair's counsel objected, arguing that the question violated the witness separation order, and the court overruled the objection. Whitehair then moved for a mistrial, which the trial court also overruled.

Although conceding that this question was not, technically, a violation of the witness separation order, Whitehair argues nonetheless that the trial court erred in denying his motion for mistrial. "The primary purpose for separation of witnesses is to prevent them from gaining knowledge from the testimony of other witnesses and adjusting their testimony accordingly." *Harrington v. State* (1992), Ind., 584 N.E.2d 558, 562, *reh'g denied.* Whitehair asserts he was entitled to a mistrial because the prosecutor's question had the effect of denying him the opportunity to test Somers' credibility by seeing if he would admit his prior crimes.

We agree with the State that the prosecutor's reference to defense counsel's opening remarks was mere surplusage and did not constitute a violation of the witness separation order. Somers did not hear any other

---

**3.** Because we have determined that the evidence was admissible under Evid.R. 404(b), we need not address whether the evidence was admissible under a res gestae theory.

witness' testimony. Additionally, Whitehair has failed to convince us that there is any basis on which to believe that Somers changed his testimony based on the prosecutor's reference. Somers was thoroughly examined and cross-examined regarding his criminal record. Even if we were to consider the prosecutor's question to have been a violation of the witness separation order, Whitehair was not put in a position of undue peril. The trial court did not err in denying Whitehair's motion for mistrial.

■ We address next whether the trial court abused its discretion in denying Whitehair's motion for mistrial based on juror Mark Creighton's inaccurate response to a question on the jury questionnaire regarding prior arrests. Creighton indicated on his jury questionnaire that he had no prior arrests or convictions. After the jury had reached its verdict, but prior to the verdict being returned, the State informed the trial court that Creighton had been stopped for shoplifting at a local Kroger store by an off duty officer. The charges against Creighton subsequently had been dismissed. When this information came to light, Whitehair made a motion for a mistrial. The trial court took the motion under advisement, pending the questioning of Creighton.

Creighton was called into court and sworn. The following colloquy transpired:

"COURT: After the jury was given the case and I think you were out to lunch the State apparently found out that you had a prior criminal charge.

[JUROR]: Pardon me?

COURT: Do you live at 3870 Henderson Ford Road?

[JUROR]: Yes I certainly do.

COURT: Were you ever arrested for shoplifting at Krogers?

[JUROR]: No I was not. Actually I was picked up and I came in and explained my side of it, we came to the Prosecutor and I explained it was basically an accident. It was a, anyway it was dismissed because he didn't think they had grounds for it.

COURT: But were you arrested by Officer Chatten at Krogers?

[JUROR]: He sent me home, I never really considered it as being under arrest. I was never read any rights, never taken anywhere."

Record, pp. 430–31. Upon further questioning, Creighton explained that on the day of the incident, he was shopping for groceries when he picked up a piece of chicken to eat while he was shopping. When he finished the chicken, which was greasy, he was not thinking and threw the bone in the trash. After he paid for his groceries and as he left the store, the officer approached him regarding his failure to pay for the chicken. Creighton explained that the prosecutor's office dropped the matter when they heard his explanation, and that he never considered himself to have been arrested because he was never read any rights, was not taken anywhere, and the off-duty officer had just sent him home. Creighton indicated that he had answered the jury questionnaire to the best of his knowledge, the incident did not make him either pro-State or pro-defendant, that he had not discussed the incident with his fellow jurors, and that he did not think about the incident during deliberations. Creighton insisted that he had not done anything wrong, and that he simply made a mistake.

Because the jury returned a guilty verdict, the trial court set another hearing on the motion for mistrial prior to sentencing. Following this hearing, the trial court determined that it could not say that Creighton was lying on the questionnaire. The court found that Whitehair was not put in a position of grave peril, that a mistrial was not warranted, and that the court should proceed with sentencing.

Whitehair argues on appeal, as he did before the trial court, that he is entitled to a mistrial because one of his main objectives was to impeach State's witness Somers. The defense wanted to impeach Somers by showing that charges against him had been dropped in exchange for his cooperation in Whitehair's case. Whitehair argues that, in furtherance of this strategy, any juror that had had charges brought against them was of particular interest to him. Whitehair argues that the inaccuracy of Creighton's response, combined with his reliance on Creighton's

response, constituted reversible error given the defense strategy.

"Generally, proof that a juror was biased against the defendant or lied on *voir dire* entitles the defendant to a new trial. [Citations omitted].... In order to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. [Citations omitted] The issue of juror misconduct is a matter within the trial court's discretion."

*Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1130; *see also Fuquay v. State* (1991), Ind. App., 583 N.E.2d 154, 157 (generally, it is reversible error for a juror to make false statements during voir dire examination, because it impairs the right to challenge the juror, either peremptorily or for cause).

Whitehair has failed to convince us that the trial court abused its discretion in the present case. Creighton's inaccurate response to the jury questionnaire did not constitute gross misconduct and was false only in a technical sense. There is ample evidence to support the trial court's conclusion that Creighton did not "lie"—he simply did not comprehend that the Kroger incident may have constituted an "arrest." Similarly, Whitehair has failed to demonstrate that he was probably harmed by the inaccurate response.

Accordingly, we find the trial court did not abuse its discretion in denying Whitehair's two motions for mistrial.

### III

We address next whether the trial court abused its discretion in allowing the State to cross-examine a witness regarding Whitehair's discharge from the Navy.

Prior to trial, Whitehair made a motion in limine to prohibit the State from introducing evidence regarding the circumstances of his less than honorable discharge from the Navy. The trial court ruled that such evidence could come in only for purposes of impeachment. During the direct examination of Whitehair's mother by Whitehair's attorney, the following exchange occurred:

"[DEFENSE COUNSEL]: Rick was at one time living away from the State wasn't he?

MRS. WHITEHAIR: Yes he was.

[DEFENSE COUNSEL]: Where was he at that time?

MRS. WHITEHAIR: He was at [G]reat [L]akes.

[DEFENSE COUNSEL]: Doing what?

MRS. WHITEHAIR: He was in the Navy.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: And what were their ages at the time Rick was in the service?

\* \* \* \* \* \*

[DEFENSE COUNSEL]: When Rick came back from the service where did he live then?

MRS. WHITEHAIR: Right after he got out of the service he got married and he lived close to Mooresville."

Record, pp. 369–71. After approaching the bench, the State then asked Mrs. Whitehair about her son's departure from the Navy, and elicited information that he had served thirty days in the "brig" for desertion and was less than honorably discharged. On appeal, Whitehair contends that the trial court abused its discretion in admitting this testimony. We disagree.

Whitehair contends first that the trial court's ruling allowing the State to cross-examine Mrs. Whitehair regarding Whitehair's discharge from the Navy contravened Evid.R. 611(b), which provides in pertinent part that the scope of cross-examination should be limited to the subject matter of direct examination. Evid.R. 611(b). In essence, Whitehair contends that the State should have been limited to cross-examining the witness regarding Whitehair's residences. Evid.R. 611(b) also provides, however, that "[t]he court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Evid.R. 611(b).

Whitehair's counsel made repeated references to Whitehair's time in the "service," in an apparent attempt to convey to the jury that he was of good character. The trial court correctly determined that Whitehair

had opened the door for the State to elicit testimony regarding his discharge from the Navy. As noted by the State, "[a] defendant may not open an issue and have it closed at his convenience." *Drollinger v. State* (1980), 274 Ind. 99, 409 N.E.2d 1084, 1087. Similarly, "[w]here the defendant injects an irrelevant matter into the trial, he cannot complain about the admission of extrinsic evidence that responds to his irrelevant evidence." *Storey v. State* (1990), Ind., 552 N.E.2d 477, 482 n. 2 (emphasis omitted).

The trial court did not abuse its discretion.

### IV

The next issue we address is whether the trial court erred in refusing to allow Whitehair to remove a juror for cause.

Whitehair produced a witness who testified that his girlfriend overheard juror Armstrong, a high school teacher, make statements which indicated that he presumed a defendant was guilty. Armstrong was called into court and questioned. Armstrong indicated that when he was called as a juror, he had joked with his class regarding jury selection and various suggestions for getting out of jury duty. Armstrong stated something to the effect of "we could find someone guilty and be back by noon." Armstrong explained that he has a reputation at school as a teacher who is always there, regardless of what else is going on and that initially he saw jury duty as a disruption. Armstrong indicated, however, that with the caliber of his students, he did not think that any of his students would perceive him as actually predisposed in a case in one way or another. Whitehair made a motion to remove Armstrong for cause, arguing that his comments demonstrated a predisposition to find someone guilty. The trial court overruled the motion.

■ Whether to excuse a juror for cause is a matter for the trial court's discretion. *Walker v. State* (1993), Ind., 607 N.E.2d 391, 395, *reh'g denied.* The trial judge is in the best position to assess the demeanor of prospective jurors. *Id.* On appeal, we will reverse the trial court's decision "only if we find that this authority was used in an illogical or arbitrary manner." *Id.*

■ As noted by Whitehair, I.C. § 35–37–1–5(a)(2) provides, in pertinent part, that it is good cause for challenge to a juror where: "That person has formed or expressed an opinion as to the guilt or innocence of the defendant...." I.C. § 35–37–1–5(a)(2). We cannot agree with Whitehair's contention that Armstrong's comment amounted to the expression of an opinion on Whitehair's guilt or innocence. As the court's and counsel's examination of Armstrong makes clear, he was making a general reference, in jest, regarding jury duty, not Whitehair's guilt or innocence. Nor do we find his comment amounts to an inherent prejudice against criminal defendants. *See* I.C. § 35–37–1–5(a)(11).

■ Finally, Whitehair contends that Armstrong should have been removed pursuant to I.C. § 35–37–1–5(a)(14), because Armstrong's dedication as a teacher and need to complete the grading of students' work within the week indicate that Armstrong had a personal interest in the result of the trial. Upon inquiry from the trial court, Armstrong indicated that it was in fact a good time to be serving on the jury because given that it was semester exam time, there was no pressure to return to school.

Armstrong demonstrated to the trial court that he was unbiased and had not made any decision on Whitehair's guilt or innocence. The trial court did not abuse its discretion in refusing to remove Armstrong from the jury. *Walker,* 607 N.E.2d at 395.

### V

The next issue we address is whether the trial court erred when it allowed the State to amend the information.

The record reveals that after the State's case, Whitehair made a motion for directed verdict. Whitehair based the motion on the fact that the charging information alleged that Whitehair knowingly retained "the property of Curtis Sinclair, to wit: 1988 Honda TRX 250R VIN JH3TE1200JK207*893.*" Record, p. 8 (emphasis added). The State presented evidence at trial showing that Whitehair was in possession of a 1988 Honda TRX 250R vehicle belonging to Curtis Sin-

clair bearing a VIN number of JH3TE1200JK207*983*. It is on this basis that Whitehair made his motion for a directed verdict.

In response to the motion, the trial court indicated that it already had observed that the eight and the nine were transposed. Following argument, the trial court denied the motion for directed verdict and permitted the State to amend the information by interlineation. The defense then presented its case.

■■■■ An indictment or information may be amended on motion by the State "at any time because of any immaterial defect, including: ... [a]ny miswriting, misspelling, or grammatical error," as well as "[a]ny other defect which does not prejudice the substantial rights of the defendant." Ind.Code § 35–34–1–5(a)(1) & (9). As our supreme court has observed, a defendant's substantial rights include the right to sufficient notice of the charges to enable the preparation of a defense. *Martin v. State* (1989), Ind. 537 N.E.2d 491, 494. "When a conforming amendment appears not to affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Id.* The amendment at issue in the present case was one of form and not substance and, therefore, was proper. *Id.; Rainey v. State* (1990), Ind.App., 557 N.E.2d 1071, 1075; *Markoff v. State* (1990), Ind.App., 553 N.E.2d 194, 195. The trial court did not err in allowing the State to correct the typographical error in the information.[4]

### VI

The final issue raised for our review is whether the trial court erred in refusing Whitehair's tendered instruction no. 12, which instructed the jury that it could conclude that the State failed to call certain witnesses because such witnesses would have been adverse to its case. The State responds that Whitehair has waived any error and, in any event, the tendered instruction is disfavored in Indiana.

At trial, the State failed to call three witnesses referred to in its evidence: Tory Brawner, Brian Walls, and Alvin Mason. Whitehair tendered his instruction no. 12, which instructed the jury that it could conclude that the State failed to call these witnesses because their testimony would have been adverse to its case. The trial court rejected the instruction.

■■■■ A party is entitled to a jury instruction if it correctly states the law, if it is supported by sufficient evidence on the record as a whole, and if the principle of law it sets forth is not covered by any other instruction which the court read to the jury. *Canaan v. State* (1989), Ind., 541 N.E.2d 894, 910, *reh'g denied, cert. denied,* 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 185. The trial court must weigh the evidence and reasonable inferences arising therefrom in order to determine whether an instruction is warranted, and, as long as there is evidence on the record capable of supporting its decision, a reviewing court will not presume to reweigh the evidence and disturb the trial court's decision. *See, e.g., Tanner v. State* (1984), Ind., 471 N.E.2d 665, 667–68.

The State contends that Whitehair has waived review of this issue by failing to provide specific arguments in support of his objection to the trial court's rejection of his tendered instruction. The State is mistaken.

■■■■ Pursuant to Ind.Crim.Rule 8(H), "[t]he manner of objecting to [jury] instructions, of saving questions thereon, and making the same a part of the record shall be the same as in Rule 51(C) of the Rules of Trial Procedure." Crim.R. 8(H). Although under a prior version of Ind.Trial Rule 51(C) a specific objection was required to preserve error in the refusal of a tendered instruction, the rule was amended in 1971, making it unnecessary to make such an objection. *State Farm Mutual Automobile Insurance Company v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941, *reh'g denied.* Under the present version of T.R. 51(C), "the action of the court in refusing a properly tendered instruction automatically gives the tendering

---

4. We agree with the State's contention that Whitehair has waived any error in the denial of his motion for judgment on the evidence by presenting evidence following the denial of the motion. *Davidson v. State* (1991), Ind., 580 N.E.2d 238, 242.

party an exception to the ruling." *Id.* 370 N.E.2d at 953. *See also Ward v. State* (1988), Ind., 519 N.E.2d 561, 562 (a party may not complain of omitted instructions when he has failed to tender any instructions on that issue); *Covelli v. State* (1991), Ind. App., 579 N.E.2d 466, 475 n. 3 (appellant waived any error based on trial court's failure to give a particular instruction by failing to tender the desired instruction), *trans. denied.* Thus, contrary to the State's position, by tendering his proposed instruction, Whitehair preserved this issue for our review.

 We agree with the State, however, that the trial court did not abuse its discretion in rejecting Whitehair's proposed instruction. Whitehair's tendered instruction, commonly referred to as a missing witness instruction, is not generally favored in Indiana. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 243; *Snow v. State* (1990), Ind.App., 560 N.E.2d 69, 72, *trans. denied.* A missing witness instruction is appropriate "only when a witness is available to be produced by one party but not by the other." *Metcalf v. State* (1983), Ind., 451 N.E.2d 321, 324; *Snow,* 560 N.E.2d at 73. Whitehair has failed to make any showing that Brawner, Walls, and Mason were available to the State but not available to Whitehair.[5] Accordingly, we find no error in the trial court's refusal of Whitehair's missing witness instruction. *Metcalf,* 451 N.E.2d at 324; *Snow,* 560 N.E.2d at 73.

For all the foregoing reasons, Whitehair's conviction for receiving stolen property is affirmed.

AFFIRMED.

BARTEAU and NAJAM, JJ., concur.

---

5. As noted by the State, the trial court found that Brawner was known and available to both the prosecution and the defense. Walls was available and did testify with regard to Whitehair's attempt to have juror Armstrong removed for cause. Finally, the trial court found that Mason's testimony would have been inculpatory and therefore damaging to Whitehair. Whitehair does not argue that Mason was unavailable to him.