**Andrew G. PRAIRIE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A02–0811–CR–985.

Court of Appeals of Indiana.

Oct. 5, 2009.

Lawrence M. Hansen, Hansen Law Firm, Fishers, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Andrew G. Prairie appeals his conviction of Identity Deception,[1] a class D felony, presenting the following restated issue for review: Did the trial court abuse its discretion in admitting evidence pursuant to Indiana Evidence Rule 404(b)?

We affirm.

The facts favorable to the conviction are that on December 2, 2006, Sergeant John Towle of the Carmel Police Department was informed that Prairie was present at

---

1. Ind.Code Ann. § 35–43–5–3.5(a) (West, PREMISE through 2009 Public Laws approved and effective through 4/20/2009).

St. Vincent's Hospital (the hospital) in Carmel for treatment and that he was wanted. Prairie had outstanding arrest warrants at the time. After discovering that no one named Prairie was on record as having arrived at the hospital for treatment, Sgt. Towle traveled to the hospital and spoke with security to ascertain whether anyone had checked into the hospital without providing proper identification. He was informed that a person claiming to be David Hutchinson had checked in without being able to verify his identity. Sgt. Towle was aware that on prior occasions Prairie had used the name "David Hutchinson" as an alias. Sgt. Towle was taken to the place where the suspect was located and was able to view the man. After doing so, he directed police department personnel to deliver to the hospital a copy of Prairie's driver's license photo. When that was done, he observed that the man claiming to be Hutchinson was in fact Prairie. He showed the driver's license photo to the hospital staff and they confirmed the patient claiming to be Hutchinson was Prairie. They also confirmed that Prairie had given Hutchinson's personal information when asked to provide his billing address. Sgt. Towle did not arrest Prairie at the time because Prairie was still being treated. After conferring with Detective Travis Tilson of the Carmel Police Department, Sgt. Towle asked the hospital staff to telephone the police department before allowing Prairie to check out. Prairie later left the hospital without checking out, but was apprehended a short time later.

Upon questioning, Prairie was asked why he identified himself as David Hutchinson. He replied that he did so because he knew he had outstanding warrants and was afraid the police would learn of his presence if he divulged his true identity to the hospital. He claimed he made up all of the identifying information given in conjunction with the alias, including social se-curity number and date of birth. Detective Tilson traveled to the hospital and retrieved the identifying information given by Prairie. Using the name, social security number, and date of birth, Detective Tilson located a David Hutchinson in Hamilton County with the same personal information. An investigation revealed that Prairie and Hutchinson had been friends some years before and that Prairie had stayed at Hutchinson's residence on several occasions. Hutchinson had kicked Prairie out of his house because Prairie stole from him. Hutchinson reported that in 1998, Hutchinson was at Prairie's residence and discovered an L.S. Ayres bill bearing his (Hutchinson's) name, but Prairie's address. Several items had been charged to the account, which was not Hutchinson's. In 2001, Prairie had used Hutchinson's name and identifying information to obtain an ATM card for Hutchinson's account with National City Bank. Hutchinson had not authorized that activity.

Prairie was charged with identity deception under I.C. § 35-43-5-3.5. Prior to trial, the State filed a motion under Evid. R. 404(b), seeking to admit evidence regarding Prairie's prior acquaintance with Hutchinson and the two instances (i.e., the L.S. Ayres card and the National City Bank ATM card) set out above. The court granted the motion upon its determination that the evidence of prior bad acts was not too remote and that it was probative on the question of the relationship between Prairie and Hutchinson.

During opening statements, defense counsel informed the jury that Prairie had outstanding warrants when he checked into the hospital and stated "[w]e do not believe that the prosecution will be able to show that there was any intent to harm or defraud[.]" *Appellant's Appendix* at 78. After the State presented some of its case,

the trial court dismissed the jury and stated as follows:

Mr. Kocher [the prosecuting attorney], I'm glad that you were presenting your testimony in the order in which you presented your testimony because it gave me the opportunity to read another case which postdates the [*Whitehair v. State*, 654 N.E.2d 296 (Ind.Ct.App. 1995) ] decision. This case is *Iqbal v. State* at 805 N.E.2d 401 [ (Ind. Ct.App. 2004) ], a 2004 decision of the Court of Appeals, and it appears that the Court of Appeals rejects the *Whitehair* ruling that the pretrial statement to police is enough to raise the issue of intent. The *Iqbal* court specifically requires defense counsel to have put the question of specific intent into question at trial. So unless that happens, I'm going to reverse the earlier ruling I made on the 404(B) evidence and exclude it.

*Id.* at 108–09. The prosecuting attorney responded that he believed defense counsel had raised the issue of intent during her opening statement. Defense counsel responded, "Your Honor, I concede that point, we have raised I believe intent." *Id.* at 110. The court determined that, in light of defense counsel's concession, it would allow the evidence over counsel's continuing objection. Prairie was convicted as set out above after the jury found him guilty as charged.

■ Prairie contends the trial court erred in permitting the State to introduce the evidence about Prairie's prior relationship with Hutchinson pursuant to Evid. R. 404(b). Our standard of review for the admissibility of evidence is well established. The admission or exclusion of evidence lies within the sound discretion of the trial court and is afforded great deference on appeal. *Whiteside v. State*, 853 N.E.2d 1021 (Ind.Ct.App.2006). We will reverse the trial court's ruling on the ad-

missibility of evidence only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

■ Rule 404(b) of the Indiana Rules of Evidence provides, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" The trial court must assess admissibility under Evid. R. 404(b) by: (1) determining whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balancing the probative value of the evidence against its prejudicial impact.

■ The trial court in this case admitted the evidence under the intent exception set out in the rule. Our Supreme Court has explained evidence is admissible under the intent exception when a defendant does more than merely deny the charged culpability and affirmatively presents a claim of particular contrary intent. *See Wickizer v. State*, 626 N.E.2d 795 (Ind. 1993). When a defendant does this, either in opening statement, by cross-examination of the State's witnesses, or in his or her own case-in-chief, the State may respond by offering evidence of prior acts that is genuinely relevant to prove the defendant's intent at the time of the charged offense. *Id.* If the trial court determines such evidence is relevant in this respect, it must then determine whether to admit or exclude the evidence

based upon the standard enunciated in Ind. Evidence Rule 403, i.e., whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." This court has since summarized the application of Evid. R. 404(b) following *Wickizer* as follows:

> Consequently, the intent exception in Evid. R. 404(b) will only be available when a defendant alleges a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief. The State may then respond by offering evidence of prior crimes, wrongs, or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense. This narrow construction was somewhat extended in *Whitehair v. State*, 654 N.E.2d 296 (Ind.Ct. App.1995). In *Whitehair*, we found that the effect of a defendant's pre-trial statement to police, combined with his counsel's opening remarks, placed defendant's intent at issue. *Id.* at 302.

*Iqbal v. State*, 805 N.E.2d at 407.

■ Prairie challenges, on two bases, the determination that the evidence in this case was admissible. First, he claims his intent was not placed in issue by his counsel. This contention is easily dispensed with inasmuch as counsel unequivocally conceded that she *had* placed intent in issue during her opening statement. Prairie cannot effect a retraction of that concession on appeal by offering argument that might have been offered had counsel chosen to contest the State's assertion at trial that she had introduced the issue. Second, Prairie challenges the court's ruling on the ground that a balancing of the probative value versus prejudicial impact of the evidence weighs in favor of excluding the evidence.

The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Whatley v. State*, 908 N.E.2d 276 (Ind.Ct.App.2009), *trans.* denied. "If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence." *Id.* at 281. Significantly for our purposes, evidence that is necessary for the jury to understand the relationships between the victim and the defendant may be admissible. *See Whatley v. State*, 908 N.E.2d 276.

In the instant case, the State contends the challenged evidence was not introduced to show Prairie's propensity to engage in crime or that his behavior was in conformity with a character trait. Instead, it was introduced to show that by giving Hutchinson's name and identifying information as a billing address to the hospital, and by indicating on the form that he, as David Hutchinson, was self-insured and would pay for the treatment himself, Prairie intended thereby not to avoid arrest, but to defraud Hutchinson. Intent to defraud is an element of the offense of identity deception. *See* I.C. § 35–43–5–3.5(a)(2)(A). We agree with the trial court that Hutchinson's testimony was probative on the question of Prairie's intent. In this regard, we note that Prairie provided the hospital with not only Hutchinson's name, but his correct social security number and birth date as well. When interviewed shortly afterward by Detective Tilson, Prairie claimed that he used a fictitious name because "he was afraid in some way or he alluded to that the hospital's record system was somehow linked to law enforcement and he was afraid he'd be captured on that open warrant if he gave his real name." *Tran-*

*script* at 101. In making his statement, according to Tilson, Prairie "implied" to the detective that he did not think David Hutchinson even existed. *Id.* at 110. That clearly was not true, based both on Prairie's prior association with Hutchinson and the fact that the personal information Prairie provided matched that of Prairie's former friend.[2] Thus, Hutchinson's testimony was relevant in that it was probative on the question of Prairie's intent in providing Hutchinson's name and information to the hospital for billing purposes.

■ Even assuming there was some probative value to the evidence, Prairie contends it was outweighed by its prejudicial impact on the jury, which in this case was that it introduced the risk that Prairie would be convicted predominantly on bad character. We do not agree that the evidence in question would have primarily impacted the jury in this fashion. Hutchinson testified about his former close relationship with Prairie and about Prairie's previous attempts to realize financial gain by co-opting Hutchinson's identity. This evidence showed first that Prairie was well acquainted with Hutchinson, and second that he possessed identifying personal information about Hutchinson that permitted him to convincingly adopt Hutchinson's identity. Although there is certainly at least a theoretical risk that the jury could conclude under these circumstances that Prairie was guilty this time because he had done something similar to Hutchinson before, we find this risk is outweighed by the fact that Hutchinson's testimony makes the existence of the intent element of the crime charged more probable than it would be without Hutchinson's testimony.

*Cf. Lannan v. State,* 600 N.E.2d 1334, 1339 (Ind.1992) (evidence of prior sexual misconduct may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake *"despite its tendency to show bad character or criminal propensity,* if it makes the existence of an element of the crime charged more probable than it would be without such evidence") (emphasis supplied). Therefore, we conclude that the trial court did not abuse its discretion by admitting evidence of Prairie's prior acquaintance contact vis-à-vis Hutchinson.

Judgment affirmed.

BAKER, C.J., and RILEY, J., concur.

---

**2.** We note here Prairie's argument on appeal that the incidents in question were too remote in time to have any relevance in this prosecution. We disagree. Regardless of the fact that the prior incidents occurred several years before the instant occurrence, they demonstrate that Prairie did in fact know Hutchinson, and also knew Hutchinson's personal information.