## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph P. Hunter
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Garmon, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 28, 2018 <br><br> Court of Appeals Case No. 18A05-1707-CR-1742 <br><br> Appeal from the Delaware Circuit Court. <br> The Honorable Thomas A. Cannon, Jr., Judge. <br> Trial Court Cause No. 18C05-1601-F3-3 |

**Friedlander, Senior Judge**

[1] Jason Garmon appeals his three convictions of robbery while armed with a deadly weapon, all Level 3 felonies.[1] We affirm.

[2] On November 21, 2015, a person later identified as Garmon entered a liquor store in Delaware County. He wore a black shirt and pants, gloves, and a black mask, and he brandished a handgun. Garmon pointed the gun at Amy Sanders, a customer, and ordered her to get on the ground. Next, he walked over to Rachel Penrod, the cashier, and pointed the gun at the back of her head. Garmon ordered her to open the cash register and then took the contents, about $500. He also took Sanders' and Penrod's cell phones and told them that if they called the police, he would know and he would come back and kill them. Garmon left the store, and security cameras showed him driving away in a Chevrolet Malibu. The police later found Sanders' phone by the side of a road leading out of town.

[3] On November 23, 2015, Krista Altland and several coworkers were at work at a bank in Delaware County. A person later identified as Garmon entered the bank. He was wearing sunglasses and had bandages on his face and hands to conceal his identity. Garmon approached Altland's teller station and quietly told her, "he wanted fifteen thousand dollars or he was going to blow [her] f*****g head off." Tr. Vol. I, p. 221. He also told her he had a gun. Garmon further ordered Altland not to give him any dye packs or use other surreptitious

---

[1] Ind. Code § 35-42-5-1 (2014).

means to track the money. She gave him all the cash to which she had access, except for the bait money that had trackable serial numbers. Garmon fled with $7,859, and Altland notified her coworkers she had been robbed.

[4] The Delaware County Sheriff's Office reached out to neighboring law enforcement organizations seeking help in identifying the person who robbed the liquor store and the bank. Those other agencies were investigating robberies that happened in their own jurisdictions around the same time as the Delaware County robberies. The sheriff's request for help eventually reached parole agent James Bennett, who looked at photos of the robber and recognized him as Garmon, a parolee under his supervision. After speaking with police officers, Bennett arranged to encounter Garmon on a street. Garmon was driving a Chevrolet Malibu that matched the one that was used in the liquor store robbery. Bennett instructed him to go to the local community corrections office for an impromptu meeting.

[5] During the meeting, Garmon admitted to Bennett that he had recently used marijuana, and Bennett handcuffed him. Bennett looked in Garmon's car and found marijuana and clothing that he thought the robber had worn.

[6] Police officers took Garmon into custody and obtained search warrants for the car, for two Blackford County addresses where Garmon had recently lived, and for Garmon's clothing. They found items in the car that belonged to Garmon and to his significant other, Amanda Jordan. They also found a black mask and black pants that matched those worn by the liquor store robber.

[7] Next, the officers went to one of the addresses identified in the search warrants. Garmon, Jordan, and Jordan's daughter lived there. An officer found a plastic bag containing $1826.36 hidden in the kitchen ceiling. The officers brought Jordan to the house from her place of employment and questioned her.

[8] The officers found a torn-up note in Garmon's clothes. They pieced it together and determined Garmon had written it to Jordan. It stated, "Amanda, If youre [sic] reading this things went wrong. Im [sic] sorry, it was all for us! I Love you forever, Jason." Tr. Ex. Vol., State's Ex. 35.

[9] Later in the day on December 8, 2015, two officers questioned Garmon at the Blackford County Sheriff's Office. We will discuss the recorded interrogation in more detail below, but during questioning Garmon admitted to robbing the liquor store and the bank, among other crimes. He provided details about the robberies that had not been released to the public.

[10] The State charged Garmon with three counts of robbery while armed with a deadly weapon, all Level 3 felonies, for his acts involving Sanders, Penrod, and Altland. Garmon filed a motion to suppress his statements from the December 8, 2015 interrogation. The trial court denied the motion after a hearing.

[11] Prior to trial, Garmon filed a motion in limine asking that the recording of the December 8, 2015 interrogation be redacted to prevent the jury from hearing about crimes he allegedly committed in other counties. He further requested that the State's witnesses be forbidden from referencing other crimes in their trial testimony. Next, the State filed a Notice of Reliance on Other Crimes,

Wrongs, or Acts Pursuant to Indiana Rule of Evidence 404(b), explaining that it intended to present evidence that: (1) Garmon was on parole when he committed the robberies at issue in this case; and (2) the officers investigating the robberies were investigating other crimes and used evidence from those crimes to identify Garmon as the culprit for the robberies at issue here. The State claimed it intended to use this evidence to prove the identity of the robber, among other purposes. The State further filed a redacted transcript of Garmon's December 8, 2015 interrogation, agreeing to omit details about Garmon's release from prison and the other crimes he committed during this period.

[12] The trial court approved the State's redacted version of the interrogation for submission to the jury. Further, the court denied Garmon's motion in limine, determining the State's witnesses would be allowed to testify about Garmon's other crimes or wrongs if offered for purposes such as motive, opportunity, intent, preparation, plan or identity.

[13] The case was tried to a jury, which determined Garmon was guilty as charged. The court imposed a sentence, and this appeal followed.

[14] Garmon raises two issues, which we restate as:

1. Whether the trial court erred in admitting into evidence the recording of Garmon's December 8, 2015 interrogation; and

2. Whether the trial court erred in admitting evidence of Garmon's other crimes or wrongs.

[15] Questions regarding the admission of evidence are within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Williams v. State*, 997 N.E.2d 1154 (Ind. Ct. App. 2013).

# 1.

[16] Garmon first claims the trial court should not have admitted into evidence the recording of his December 8, 2015 interrogation because the incriminating statements he made during questioning were the result of coercive police misconduct. Specifically, Garmon argues the interviewing officers threatened to arrest his significant other, Amanda Jordan, unless he admitted to committing the robberies.

[17] When a defendant challenges the admissibility of a confession, the State must prove beyond a reasonable doubt that the confession was given voluntarily. *Henry v. State*, 738 N.E.2d 663 (Ind. 2000). We consider the totality of the circumstances, including the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health. *Williams*, 997 N.E.3d 1154. We also consider evidence of inducement by way of violence, threats, promises, or other improper influences. *Henry*, 738 N.E.2nd 663. We do not reweigh the evidence. *Luckhart v. State*, 736 N.E.2d 227 (Ind. 2000).

[18] In this case, two officers questioned Garmon for ninety minutes in an interview room at the Blackford County Sheriff's Office. Other officers observed from a neighboring room, and the interrogation was recorded. The arresting officer

had informed Garmon of his Miranda rights while taking him into custody, and at the beginning of the interrogation the officer read him his rights again. Garmon read and signed a form informing him of his rights, including an acknowledgement that no pressure could be used against him. The officers promptly brought Garmon water when he said he was thirsty.

[19] At the time of the interrogation, Garmon was in his mid-thirties and had completed his GED. He does not argue that he was experiencing any physical or mental medical challenges that would have rendered him unable to assert his constitutional rights.

[20] The crux of the dispute is whether the police unfairly overcame Garmon's will by threatening to arrest Jordan. In 1971, the Indiana Supreme Court determined a confession was involuntary where the police told a defendant that his wife was also "a prime suspect" in a series of burglaries and that they would arrest her if the defendant did not confess. *Hall v. State*, 255 Ind. 606, 610, 266 N.E.2d 16, 19 (Ind. 1971). Similarly, in *Storey v. State*, 830 N.E.2d 1011 (Ind. Ct. App. 2005), a panel of this Court deemed Storey's confession to be invalid after the arresting officer repeatedly threatened to arrest Storey's wife, who the officer believed had been involved in the crime at issue. This Court has stated that to prove that a confession was involuntary due to police threats against an accused's family, "the defendant must present evidence of direct threats made by the police." *Cain v. State*, 594 N.E.2d 835, 840 (Ind. Ct. App. 1992), *clarified on reh'g*, 599 N.E.2d 625 (Ind. Ct. App. 1992).

[21]     In the current case, neither of the officers who questioned Garmon threatened to arrest Jordan. To the contrary, they simply asked Garmon if Jordan had anything to do with the robberies, explaining that they found evidence in a location to which she had access, specifically the house. One of the officers further told Garmon that he wanted to believe Jordan was not involved. Garmon repeatedly and strongly denied that Jordan knew about the robberies or was involved in them. He asked the officers about Jordan's current whereabouts, and the officers reassured him that she was at home and was not in custody.

[22]     In addition, during the ninety-minute interrogation the officers and Garmon discussed many topics, not just Jordan. They spent a great deal of time discussing the details of the two robberies and several other crimes that Garmon allegedly committed during the same period. They also discussed Garmon's concerns that his family would cut off contact with him due to his criminal acts.

[23]     Considering the circumstances of the interrogation, including its relatively short duration, the breadth of topics discussed, Garmon's physical and mental condition, the officers' advisement of Garmon's rights, and most importantly the absence of a direct threat by police to arrest Jordan if Garmon did not confess, we conclude Garmon's incriminating statements were voluntary. The trial court did not abuse its discretion in admitting the interrogation into evidence at trial.

**2.**

[24] For his second claim of error, Garmon argues the trial court erred in admitting evidence of his prior crimes or other wrongs because that evidence unduly prejudiced the jury against him.

[25] "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evidence Rule 404(b)(1). This rule protects against the improper inference that if the defendant acted badly in the past, the defendant's present, charged actions merely conform with those past bad acts. *Erickson v. State*, 72 N.E.3d 965 (Ind. Ct. App. 2017) (quotation omitted), *trans. denied*.

[26] On the other hand, evidence that a person committed a past crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence Rule 404(b)(2). Even if such evidence is admissible for the purposes set forth in Rule 404(b)(2), the evidence may still be excluded if "its probative value is substantially outweighed by a danger . . . of undue prejudice." Ind. Evid. Rule 403. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice. *Prairie v. State*, 914 N.E.2d 294 (Ind. Ct. App. 2009).

[27] Here, Garmon claims the trial court should not have admitted testimony from parole agent James Bennett or Chief Deputy James Heflin of the Blackford

County Sheriff's Office as to the following prior (or concurrent) crimes, wrongs or acts: (1) Garmon had recently been released from prison and was on parole under Bennett's supervision; (2) officers from several different counties and the State Police were investigating Garmon for robberies in different jurisdictions; (3) Chief Deputy Heflin knew Garmon from a prior job as a correctional officer in the Blackford County Jail; (4) marijuana was found in Garmon's car on the day of his arrest; and (5) Bennett recognized Garmon from a photograph provided by the Blackford County Sheriff's Department.

[28] The State argues this evidence was relevant and admissible to prove Garmon's identity as the robber of the liquor store and bank. We agree. During cross-examination of the State's first witness, Town Marshal Jonathon Snodgrass, Garmon questioned whether the State had collected DNA or fingerprint evidence from the crime scenes. He also questioned whether the money that was found in Garmon's house could be traced to the bank and whether the car he was driving on the day of his arrest was the same car that was used in the liquor store robbery. The identity of the robber was at issue.

[29] The State's witnesses, in the course of describing how they identified Garmon, were inevitably required to explain that multiple law enforcement agencies were investigating concurrent crimes in multiple jurisdictions. It was also necessary to discuss how Bennett knew Garmon and was authorized by law to order him to attend a meeting, take him into custody, and search his car. We conclude the evidence was relevant and probative to show identity. *See Byers v. State*, 709

N.E.2d 1024 (Ind. 1999) (the circumstances of Byers' prior arrest were relevant to establish he was the person who committed the crimes at issue).

[30] Next, we agree with the trial court that the probative value of Garmon's prior acts was not substantially outweighed by the danger of undue prejudice. The evidence of the extensive police investigation was crucial to explain how Garmon was identified. Further, the trial court limited the information the jury heard about the other crimes and the reason Garmon had been in prison. In addition, the court gave identical limiting instructions to the jury after Chief Deputy Heflin and Bennett testified, explaining that those witnesses provided evidence that Garmon may have been involved in "other crimes, wrongful conduct, or bad acts other than those charged in the information." Tr. Vol. I, p. 248, Tr. Vol. II, p. 29. The court told the jury that the evidence was relevant only for the issues of "identity and/or motive" and should be considered only for those purposes. *Id.* The trial court repeated the limiting instruction in its final jury instructions. We presume that the jury follows the trial court's instructions. *Harris v. State*, 824 N.E.2d 432 (Ind. Ct. App. 2005). The court did not abuse its discretion in admitting those portions of Bennett and Chief Deputy Heflin's testimony.

[31] Even if the trial court had abused its discretion in admitting evidence of prior wrongs or acts under Evidence Rule 404(b), we reverse only if the erroneous admission of evidence affects a defendant's substantial rights. *Stettler v. State*, 70 N.E.3d 874 (Ind. Ct. App. 2017), *trans. denied*. The jury heard Garmon's detailed confession to the robberies and was provided with ample corroborating

evidence, including that on the day of his arrest he was driving a car identical to that used by the liquor store robber, that the car contained clothing that was worn during one of the robberies, and that the police found a moderate sum of money concealed in Garmon's house. Any error in the admission of Garmon's prior wrongs or acts would have been harmless.

[32] For the reasons stated above, we affirm the judgment of the trial court.

[33] Judgment affirmed.

May, J., and Crone, J., concur.