## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 20 2019, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Auralea Till,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 20, 2019<br><br>Court of Appeals Case No.<br>19A-CR-808<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Frances C. Gull, Judge<br><br>Trial Court Cause No.<br>02D05-1710-F3-54 |

**Crone, Judge.**

# Case Summary

Auralea Till appeals her conviction, following a jury trial, for level 3 felony neglect of a dependent. Till asserts that the trial court abused its discretion in admitting certain evidence and that the State presented insufficient evidence to support her conviction. She also claims that the twelve-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and her character. We find no abuse of discretion, and we conclude that the State presented sufficient evidence. We further conclude that Till has not met her burden to demonstrate that her sentence is inappropriate. Accordingly, we affirm.

# Facts and Procedural History

Till had two children with Daniel Lopresti. The first child, D.L., was born on May 15, 2015, and the second child, V.L., was born on October 6, 2016. On June 3, 2017, Till awoke to care for the two young children around 8:00 a.m., and she began drinking alcohol before 10:30 a.m. Lopresti left the home after 11:30 a.m. to go to run errands and to pick up some fast-food for the family. Sometime later that day after Lopresti returned, Till was outside with the children while Lopresti worked in the yard repairing a small swimming pool.

At around 8:00 p.m., Lopresti asked Till to take the children inside because D.L. was interfering with his work on the pool. Till went inside with the children. She turned a movie on for D.L. in the living room, and she laid seven-month-old V.L. on the cluttered floor. Till went into the kitchen, poured

a glass of juice, washed dishes, and pulled dinner out of the refrigerator. She then went outside to talk to Lopresti and to smoke a cigarette.

[4] When Till returned inside, she observed that V.L. had a blanket over his head. She removed the blanket and discovered that he had a plastic bag wrapped around his head. Till grabbed the baby and ran outside carrying him in her arms and screaming. Lopresti saw that V.L. was not breathing and that he had already turned blue. Till put V.L. down in the grass and began CPR while Lopresti called 911. Lopresti took over performing CPR because he realized that Till was just blowing air over V.L.'s face rather than blowing air into his mouth.

[5] Emergency personnel arrived on the scene and found Lopresti administering CPR. V.L. was still not breathing and had no heartbeat, so the paramedics began chest compressions and placed a bag and a mask over V.L.'s mouth to provide "positive-pressure ventilation." Tr. Vol. 2 at 219. The paramedics were eventually able to resuscitate V.L., and he was transported by ambulance to the hospital. Lopresti accompanied V.L. in the ambulance while Till stayed home.

[6] Police officers and a Department of Child Services investigator arrived on the scene and observed that Till was exhibiting signs of intoxication and smelled of alcohol. Lopresti's brother-in-law, Timothy Wolford, who had come to the home to pick up D.L., noticed that when he hugged Till that she "reeked" of alcohol. Tr. Vol. 3 at 93. Till was behaving frantically and told officers

inconsistent stories about the circumstances surrounding what happened to V.L.

[7] V.L. spent several weeks in a local hospital before being transferred to Riley Children's Hospital Rehabilitation. He had sustained a severe hypoxic brain injury caused by a "prolonged … low-oxygen" event. Tr. Vol. 2 at 240. He needed a feeding tube and he suffered from nerve storming.[1] V.L. has permanent brain damage and was ultimately diagnosed with cerebral palsy, epilepsy, and numerous developmental delays.

[8] The State charged Till with level 3 felony neglect of a dependent. On November 27, 2017, the State filed its notice of intent to present Indiana Evidence Rule 404(b) evidence, to which Till responded with a written objection. The State sought to introduce evidence of Till's alcohol use while pregnant with V.L. and her three older children, her alcohol use while caring for V.L. and her three older children, her inattentiveness to V.L., her unhappiness about being pregnant with V.L., and her desire to abort V.L. The trial court held a hearing and subsequently issued its order denying the State's request to present evidence of Till's "prior incidents of alcohol use resulting in her children being placed at risk and her alcohol use while pregnant … unless the door is opened" by defense counsel. Appellant's App. Vol. 2 at 44.

---

[1] Nerve storming or "neuro storm" is what happens after a "prolonged hypoxic event" when "nerves just start firing randomly[,]" causing agitated behavior, muscle twitches, and high fevers. Tr. Vol. 2 at 240-41.

However, the trial court ruled that Till's "alcohol use/inattention to the victim in this case after his birth is relevant and admissible." *Id*.

During trial, Lopresti testified, over Till's objection, that Till became intoxicated regularly while caring for V.L. and D.L., requiring him to often take the children to his sister's house so that his sister could care for them. Lopresti's sister, Nichole Wolford, testified, over Till's objection, that she observed Till leave V.L. unattended on numerous occasions and that she had discussed this dangerous behavior with Till. At the conclusion of the trial, the jury found Till guilty of level 3 felony neglect of a dependent. The trial court imposed a twelve-year aggregate sentence. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in admitting certain evidence.

Till challenges the trial court's admission of evidence. The appellate court affords the trial court wide discretion in ruling on the admissibility of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). "We review evidentiary decisions for abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances." *Id*.

Till claims that the trial court abused its discretion in admitting certain testimony that she was inattentive to V.L. while also using alcohol on prior occasions. Specifically, Till argues that the testimony was inadmissible character evidence pursuant to Indiana Evidence Rule 404(b). The State

responds that the challenged evidence was admissible to prove Till's intent and to also show that what happened to V.L. was not simply an accident.

[12] Indiana Evidence Rule 404(b) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence Rule 404(b)(2). In assessing the admissibility of Rule 404(b) evidence, (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Whatley v. State*, 908 N.E.2d 276, 281 (Ind. Ct. App. 2009), *trans. denied*.

[13] Here, the challenged testimony that Till often used alcohol while caring for V.L., that she had exhibited a pattern of leaving him unattended, and that she had been warned of the dangers of doing so, was relevant and admissible to show her intent and lack of accident. Indeed, the trial court held a full hearing prior to trial to consider the entirety of the State's proposed 404(b) evidence and specifically limited the admissible evidence to the above-mentioned type of testimony based upon the court's determination that such evidence was highly probative of Till's intent. Moreover, Till concedes that her defense at trial was that what happened to V.L. was an accident, and it is well settled that lack of

accident is a subset of intent. *See Fairbanks v. State*, 119 N.E.3d 564, 568 (Ind. 2019) (the State may offer other-bad-acts evidence of lack of accident when an accident defense is raised or the defendant places accident at issue at trial).

[14] Nevertheless, Till maintains that the trial court should have excluded the testimony because its probative value was substantially outweighed by its prejudicial effect. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice. *Prairie v. State*, 914 N.E.2d 294, 298 (Ind. Ct. App. 2009). Contrary to Till's assertions, the prejudicial effect of the evidence of her prior alcohol use, inattentiveness to V.L., and warnings about the same, did not substantially outweigh its probative value. Although such evidence certainly did not paint Till in a good light, any prejudice was outweighed by the evidence's highly probative value to show that V.L.'s injuries were not simply accidental as claimed by Till but the result of Till's knowing behavior. The trial court did not abuse its discretion in admitting the challenged evidence.

## Section 2 – The State presented sufficient evidence to support Till's conviction.

[15] Till next challenges the sufficiency of the evidence to support her conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a

reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500.

[16] To convict Till of level 3 felony neglect of a dependent, the State was required to prove that Till, a person having the care of V.L., knowingly or intentionally placed V.L. in a situation that endangered his life or health, which resulted in serious bodily injury to V.L. Ind. Code § 35-46-1-4(b)(2). A "knowing" mens rea in this regard requires a subjective awareness of a high probability that a dependent had been placed in a dangerous situation. *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011) (citing Ind. Code § 35-41-2-2(b)).

[17] Till concedes that, as V.L.'s mother, she was charged with his care. She also concedes that V.L. suffered serious bodily injury. She contends, however, that the State failed to establish that she knowingly placed V.L. in a situation endangering his life or health. That is, she argues that the State presented insufficient evidence that she was subjectively aware of a high probability that V.L. had been placed in a dangerous situation when she left him unattended on the cluttered living room floor.

[18] In most child neglect cases, a finding of a knowing mens rea requires the factfinder to infer the defendant's mental state. *Pierson v. State*, 73 N.E.3d 737, 741 (Ind. Ct. App. 2017), *trans. denied*. Thus, this Court must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper. *Id*. Here, the jury heard testimony from several witnesses that Till exhibited

signs of intoxication when V.L. was injured, and that she gave inconsistent stories regarding why and for how long she left V.L. unattended. The medical evidence indicated that V.L. was left unattended for a prolonged period. Moreover, the jury saw multiple pictures of the area where Till discovered V.L. unresponsive. Those pictures showed an area completely covered with toys, clothes, cups, blankets, plastic bags, trash, and all sorts of debris that could undoubtedly be extremely dangerous to an unattended small child with even the slightest mobility.

[19] Till directs us only to her self-serving testimony that she did not see anything dangerous around the area where she left V.L. unattended. This is simply a request for us to reweigh the evidence, and we cannot. There was sufficient evidence from which a reasonable jury could infer that Till acted knowingly, as she was "aware of facts that would alert a reasonable parent, under the circumstances, to take affirmative action to protect the child." *Hastings v. State*, 560 N.E.2d 664, 667 (Ind. Ct. App. 1990). The State presented sufficient evidence to support Till's conviction.

## Section 3 – Till has not met her burden to demonstrate that the trial court imposed an inappropriate sentence.

[20] Finally, Till requests that we reduce the twelve-year sentence imposed by the trial court pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears

the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. "The question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[21] Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a level 3 felony is between three and sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). The trial court here imposed a twelve-year sentence, which is above the advisory but well below the maximum allowable sentence.

[22] Till maintains that an enhanced sentence is inappropriate based upon the nature of her offense because "[t]he fact that the child sustained injuries as a result of what happened" is already contemplated by level 3 felony charge and that

"[n]othing about the injury would be a cause for aggravating it beyond the advisory sentence[.]" Appellant's Br. at 29. Till attempts to minimize the egregiousness of her behavior and ignores that V.L. did not just suffer serious bodily injury, he suffered extensive and lifelong brain damage. He has been diagnosed with cerebral palsy, epilepsy, and numerous developmental delays, and he currently spends twelve to fourteen hours per week in various therapies. The trial court noted the "extraordinary impact" Till's neglect had on V.L. due to the seriousness of his injuries and the fact that he will "never have a normal life." Tr. Vol. 4 at 173-74. Till has not persuaded us that the nature of the offense warrants a sentence reduction.

[23] Till fares no better when we consider her character. The character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). While we acknowledge that Till does not have a prior criminal history, the trial court found that Till has a long history of exhibiting several other negative character traits. She has a history of alcohol abuse and admits to drinking alcohol while pregnant. She lost custody of two of her older children after they were diagnosed with fetal alcohol syndrome. Even after that tragic outcome, she did not change her behavior, as her next two children were also diagnosed with fetal alcohol syndrome. As the trial court observed, despite the intervention of those involved in social services, Till has made "miserable efforts" toward recovery and reformation. Tr. Vol. 4 at 173. She currently does not have custody of any of her five children, and she is permitted only supervised visitation with three of

them. Moreover, Till is more than $25,000 behind in her child support obligation. None of this reflects positively on her character.

[24] Till points to her recent attendance at Alcoholics Anonymous meetings to demonstrate her commitment to change. However, even after V.L. was injured, Till continued to abuse alcohol, reportedly frequenting bars and proudly posting her escapades on social media. As noted by the trial court, Till's recent "efforts at recovery have been too little and far too late." *Id.* at 174. Under the circumstances, Till has not met her burden to demonstrate that a twelve-year sentence is inappropriate in light of the nature of the offense and her character. Therefore, we affirm the sentence imposed by the trial court.

[25] Affirmed.

Baker, J., and Kirsch, J., concur.